517 So.2d 670 (1987)
Marjorie O. DAVIS, Petitioner,
v.
STATE of Florida, Respondent.
No. 69019.
Supreme Court of Florida.
December 23, 1987.
*672 Robert Stuart Willis, Offices of Robert Stuart Willis, Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for respondent.
EHRLICH, Justice.
We have for review Davis v. State, 489 So.2d 754 (Fla. 1st DCA 1986), which expressly and directly conflicts with decisions of this Court. We have jurisdiction. Art. V, section 3(b)(3).
Davis was arrested for the shooting death of her husband. Pursuant to a plea agreement with the State, Davis pled guilty to Second Degree Murder, and to Use of a Firearm During the Commission of a Felony. The recommended guidelines sentence for the murder was twelve to seventeen years incarceration. The trial judge exceeded the guidelines sentence by twenty-three years, imposing the statutory maximum sentence of forty years.
Davis appealed the sentence on the ground that the trial court did not express clear and convincing reasons for the departure. The district court found that it was possible to extract the following four reasons for departure from the judge's lengthy written justification:[1]
1. The cold-blooded nature of the offense.
2. Abuse of the trust of a family relationship.
3. Presence of the victim's son in the house.
4. Defendant's sanity and absence of "abused spouse syndrome."
489 So.2d at 756. The district court stated that the fourth reason was not a valid reason for departure because the statements did not meet the "clear and convincing" standard required by Florida Rule of Criminal Procedure 3.701. The district court affirmed the sentence, however, finding that the remaining reasons for departure were valid and the State had met its burden under Albritton v. State, 476 So.2d 158 (Fla. 1985), showing beyond a reasonable doubt that the absence of the invalid reason would not have affected the departure sentence. Davis, 489 So.2d at 756-57.
Petitioner argues that the district court erred in finding the first three reasons for departure to be valid. We agree. A departure from the guidelines may not be justified by reasons prohibited by the guidelines themselves, factors already taken into account in calculating the guidelines score, or an inherent component of the crime in question. State v. Mischler, 488 So.2d 523, 525 (Fla. 1986). The function of an appellate court in reviewing a sentencing guideline case is to review the reasons given to support departure and determine whether the trial court abused its discretion in finding those reasons to be clear and convincing. Id. In order for a reason to be clear and convincing, there must be an appropriate reason for departure and the facts of the case must establish the reason in that particular case beyond a reasonable doubt. Id.
In finding reason one, the cold-blooded nature of the offense, to be a valid reason for departure, the district court determined that the trial judge was contemplating the cruelty with which the crime was committed, not premeditation. We disagree and conclude that, in the context in which it was made, the trial judge's conclusion that the murder was cold-blooded indicates the trial judge was contemplating *673 premeditation.[2] This reason therefore violates the proscription in Rule 3.701(d)(11) against considering factors relating to an offense for which convictions were not obtained. See Scurry v. State, 489 So.2d 25, 29 (Fla. 1986). We concur with the analysis of Judge Nimmons in Bulger v. State, 509 So.2d 1269, 1270 (Fla. 1st DCA 1987), that a finding of premeditation is "impliedly negated by the absence of a first-degree murder conviction. This rationale is applicable even where the second-degree murder conviction is the result of a plea, as in the instant case." (Emphasis in original and citations omitted).
Furthermore, the factors considered by the district court as making the crime particularly cruel do not establish clear and convincing reasons for departure. The fact that Davis shot her husband while he was asleep is not alone an appropriate reason for departure. Williams v. State, 492 So.2d 1308 (Fla. 1986). Although cruelty towards the victim may justify departure in some circumstances, the fact that Davis left the home rather than assisting her husband after shooting him is not a valid reason for departure. Such act occurred subsequent to the criminal act which caused her husband's death and does not make the criminal act itself more cruel. In addition, all killings, by any standard of decency, are cruel. There was nothing in the present case, however, to indicate this crime was committed in an excessively brutal manner. There was no evidence that the victim was aware of the impending attack. As in Scurry, consideration of the fact that the victim was able to stagger to the phone in another room to call for help before he died "would imply that a defendant should make sure he does a thorough job and effects death as soon as possible in order to be sentenced within the guidelines. We find no logic here." 489 So.2d at 29. The fact that the son was present, even if clearly established, is taken into account in the third reason and may not be considered twice.
The second reason for departure, abuse or breach of trust, has been found to constitute a clear and convincing reason to justify departure in some situations. See Hankey v. State, 485 So.2d 827 (Fla. 1986) (burglary victim gave defendant job and entrusted him with key to fulfill duties and defendant abused position by using key to enter place of business after hours and steal money and items of value); Gardener *674 v. State, 462 So.2d 874 (Fla. 2d DCA 1985) (teacher abused position of trust by selling cocaine on school property). See also Steiner v. State, 469 So.2d 179 (Fla. 3d DCA), review denied, 479 So.2d 118 (Fla. 1985). In each of the these cases, the crime committed was directly related to the trust conferred on the defendant and the trust was the factor that made possible the commission of the crime. In the instant case, no particular trust bestowed on Davis by the victim formed the foundation of the crime; the crime was not directly related to a specific trust as in the above cases. In Williams v. State, 462 So.2d 36 (Fla. 1st DCA 1984), review denied, 471 So.2d 44 (Fla. 1985), relied on by the district court below, an upward departure was upheld based on the fact that the stepfather used his "familial authority" to enable him to commit a lewd, lascivious or indecent assault on his ten-year-old stepdaughter. Davis, in contrast, did not take advantage of a position of authority over a victim who was a young child.
Further, were we to uphold a departure from the guidelines in this case based on abuse of the trust of a family relationship, it would serve as authority to do the same in most cases involving the killing of a spouse or other family member. If the sentencing commission had intended to impose a harsher sentence on those convicted of second degree murder when the victim was the defendant's spouse, it would have created a separate category for spousal homicide for purposes of establishing a score under the sentencing guidelines. Cf. Mischler, 488 So.2d at 526. Although abuse of the trust of a family relationship may justify departure in some instances, this is not a clear and convincing reason for departure under the facts at hand.
In holding the third reason, presence of the victim's son in the house and the possible long lasting traumatic effect on the child of the victim, to be a valid reason for departure, the district court relied on its prior decisions in Casteel v. State, 481 So.2d 72 (Fla. 1st DCA), quashed, 498 So.2d 1249 (Fla. 1986) and Scurry v. State, 472 So.2d 779 (Fla. 1st DCA 1985), quashed, 489 So.2d 25 (Fla. 1986). Although emotional trauma suffered by the son as a result of witnessing the shooting of his father may be an appropriate reason for departure, Casteel, 498 So.2d 1249, the facts demonstrating such must be proven beyond a reasonable doubt. Mischler, 488 So.2d at 525. See also Ortagus v. State, 500 So.2d 1367 (Fla. 1st DCA 1987). The trial judge's statements regarding this reason for departure reveal only speculation on the judge's part concerning the child's presence or future emotional impact:
The Court can't help but wonder about the young boy in the next bedroom, who must have heard this volley of shots sounding out in his home in the middle of the night. Did this wake him up? Did he see his mother running out of the house with the smoking gun in her hand? Did he come out in the hallway and see his father with blood gushing out of him, attempting to telephone for help? What scars will this child carry with him for the rest of his life any time he thinks of this fateful evening in his home? (Emphasis added.)
After careful review of the record, we conclude that the evidence is insufficient to establish that the child suffered emotional trauma or even witnessed the actual shooting. Therefore, because the facts supporting this reason for departure were not proven beyond a reasonable doubt, the trial judge abused his discretion in departing based on this reason.
The district court correctly determined that the fourth reason for departure, sanity and absence of "abused spouse syndrome", was invalid. Davis, however, contends that in considering her sanity and the absence of "abused spouse syndrome" the trial judge departed because of an inherent component of the crime which constitutes per se reversible error according to our decision in Mischler. Davis argues the district court therefore erred by not remanding for resentencing on this issue alone. We disagree. We recently stated in State v. Rousseau, 509 So.2d 281, 282 (Fla. 1987), that we did not intend to introduce a per se reversible error standard of review into the *675 sentencing guidelines context and reaffirmed that the standard enunciated in Albritton is to be utilized when an appellate court is confronted with both valid and invalid reasons for departure from a guidelines sentence. This standard provides that the case should be remanded for resentencing when a departure sentence is grounded on both valid and invalid reasons, "unless the state is able to show beyond a reasonable doubt that the absence of the invalid reasons would not have affected the departure sentence." Albritton, 476 So.2d at 160 (Fla. 1985).
In conclusion, none of the reasons given to justify departure in this case are clear and convincing. Therefore, Davis should be resentenced within the recommended guidelines range.
Accordingly, we quash the decision of the district court and we remand with directions to further remand to the trial court for resentencing in accordance with this decision.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Fla.R.Crim.P. 3.701(d)(11) provides: "Any sentence outside of the guidelines must be accompanied by a written statement delineating the reasons for the departure." (Emphasis added). We again emphasize that the reasons supporting departure should be explicitly listed and then followed, if deemed necessary, by the relevant facts used to support the reason in order to facilitate appellate review. The form of narrative exposition presented in the instant case to justify departure makes it difficult for a reviewing court to determine which portions of the narrative are relied upon for departure and which portions are simply descriptive of the scenario. See Lerma v. State, 497 So.2d 736 (Fla. 1986).
[2] In support of his departure, the trial judge commented:

Financial problems had reached a climax in that the husband had found out that the Visa card was overdrawn when he was refused service on it and he had begun to ask questions about the family's savings account which was supposed to be in the neighborhood of $12,000.00. Ms. Davis knew that this account had been drawn down to a little over $50.00. The Saturday before the murder, Sunday night or Monday morning, Ms. Davis stated she contemplated killing her husband that day but the opportunity did not arise. On Sunday, September 23, 1984, she related they went to bed but she did not sleep. At 1:32 A.M., she decided she would get the gun from the sewing bag next to the refrigerator in the kitchen. At that time she could not get up the nerve to get it, went to the bathroom and went back to bed. At 1:42 A.M. she went into the kitchen and got the gun from her sewing bag where she had placed it. She then stood for a few minutes at the doorway of their son's bedroom, looking into the master bedroom from the doorway. Again, she relates that at 1:52 A.M. she began standing at the side of the bed with the gun in her hand and until 2:00 A.M., she stood there trying to think of a way not to kill him. But, and I quote,
I could not think of any way to quickly pay off the debts and knew John would definitely call Burroughs Federal Credit Union and tell them to transfer funds from our savings account to pay the $1,600.00 Visa bill, and they would tell him we only have $58.00 in the account, not the $12,000.00 he thought we had and that I had been lying to him that we had, but didn't. These eight minutes were the longest, most terrible minutes ever.
At 2:00 A.M. she fired a shot, her husband jerked up and screamed, `Oh, my God!', several times. She then fired five additional shots. Even with this, she did not instantly kill her husband but he left the bedroom, wandered into the hallway and died in the kitchen trying to phone for help. At this time Ms. Davis was outside, sitting on the tailgate of a pick-up truck and could easily see her husband in need of assistance, had she desired that he not die.
From the above facts, this Court can reach no conclusion other than this murder was cold-blooded and abused the trust that must be exhibited by spouses to each other.