567 So.2d 882 (1990)
Glen A. WEMETT, Petitioner,
v.
STATE of Florida, Respondent.
No. 74723.
Supreme Court of Florida.
August 30, 1990.
Rehearing Denied November 1, 1990.
*883 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for petitioner.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
BARKETT, Justice.
We have for review Wemett v. State, 547 So.2d 955 (Fla. 1st DCA 1989), in which the district court certified the following as a question of great public importance:
Is a life sentence imposed under guidelines sentencing always a harsher sentence than a term of years, regardless of the length of the sentence for a term of years.
Id. at 958.[1]
Glen A. Wemett was convicted in 1983 of two counts of burglary of a dwelling with assault (a first-degree felony punishable by a term of years not exceeding life imprisonment); one count of unarmed robbery (a second-degree felony punishable by a maximum fifteen years' imprisonment); and one count of attempted unarmed robbery (a third-degree felony punishable by a maximum five years' imprisonment). The offenses were committed in April 1983, and the circuit court sentenced Wemett in July 1983, before the sentencing guidelines became effective. The court sentenced Wemett as follows: count one, burglary, 120 years with jurisdiction retained for half; count two, unarmed robbery, fifteen years; count three, burglary, 120 years with jurisdiction retained for half; and count four, attempted robbery, five years. All sentences were consecutive, totaling 260 years.
In 1988, the First District remanded the case for resentencing because the trial court erroneously retained jurisdiction for one-half, rather than one-third, of the sentence. Wemett v. State, 529 So.2d 1288 (Fla. 1st DCA 1988). See § 947.16(3), Fla. Stat. (1981). On remand, the circuit court could have merely corrected the illegal portion of its sentence to comply with section 947.16(3). However, Wemett elected to be resentenced under the guidelines, for which his recommended range was five and one-half to seven years. The circuit court heard no new evidence at the resentencing hearing, relying instead on the record and its recollection of testimony given in the 1983 proceedings. The circuit court then acceded to the state's request to depart from the guidelines and resentenced Wemett to serve two concurrent terms of life imprisonment on the burglary charges, plus consecutive terms of fifteen years for robbery and five years for attempted robbery.
The district court affirmed the departure from the guidelines. But on the authority of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and Blackshear v. State, 531 So.2d 956 (Fla. 1988), it reversed the imposition of concurrent life sentences as being a more severe sanction than the combined term of years imposed in the 1983 sentencing. The district court then certified the question now before this Court.
The state argues that the two sentences are roughly equivalent because each was the harshest lawful sentence allowed under the respective sentencing schemes, and that both were designed to achieve a single purpose  to keep Wemett in jail for the rest of his life. Wemett argues that the effect of his original sentence was less *884 harsh than the guidelines life sentences because it would be possible for him to win an early release under the original sentence, whereas he could not under the guidelines life sentences.
It is clear that under the original sentence, Wemett was eligible to earn gain-time, sections 944.275, .291, Florida Statutes (1981), and to be released on parole, section 947.16, Florida Statutes (1981). Although the circuit court retained jurisdiction for a portion of the sentence, it could choose to relinquish jurisdiction, thereby making Wemett eligible to benefit from gain-time or parole. Even if the circuit court were to choose not to relinquish jurisdiction, Wemett would become eligible to benefit from gain-time or parole if he were to survive the period during which the circuit court retained jurisdiction. Thus, it would be possible for Wemett to win an early release under the original sentencing scheme, regardless what his life expectancy may be. See Harmon v. State, 438 So.2d 369, 370-71 (Fla. 1983).
The same cannot be said of a guidelines life sentence. Wemett would not be eligible for parole under the guidelines, Stewart v. State, 549 So.2d 171, 175-76 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990); Smith v. State, 537 So.2d 982, 987 (Fla. 1989), nor does guidelines sentencing allow Wemett to benefit from gain-time while serving a life sentence.
We find that the two sentences are not functionally equivalent. See also Blackshear, 531 So.2d at 956 (two concurrent guidelines life sentences were more harsh than the trial court's original imposition of two concurrent sixty-five-year sentences). The combined term of years left open the possibility of early release, whereas the guidelines life sentences did not. Wemett's concurrent life sentences under the guidelines had the effect of being more harsh than the combined term of years he received under preguidelines law. Therefore, we answer the certified question in the affirmative under the facts of this case.
Our answer does not end the analysis, however, because we must determine whether the due process considerations expressed in Pearce, 395 U.S. at 711, 89 S.Ct. at 2072, and Blackshear, 531 So.2d at 956, rendered the harsher sentence unconstitutional.[2]
In Pearce, a defendant successfully appealed a conviction but was retried and convicted again. After the second trial, the trial judge imposed a sentence more harsh than the one the judge had imposed for the original conviction. The United States Supreme Court held that the harsher sentence violated due process because it evinced vindictiveness against the defendant for having successfully appealed the first conviction and sentence. Pearce, 395 U.S. at 725, 89 S.Ct. at 2080. Pearce and its progeny established "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." United States v. Goodwin, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982) (footnote omitted). The reasons for imposing a more harsh sentence must rely upon "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Pearce, 395 U.S. at 726, 89 S.Ct. at 2081. Of course, there is no need to apply a presumption of vindictiveness if the record contains proof of actual vindictiveness. Texas v. McCullough, 475 U.S. 134, 138, 106 S.Ct. 976, 978-79, 89 L.Ed.2d 104 (1986); Wasman v. United States, 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984); Goodwin, 457 U.S. at 380-81, 102 S.Ct. at 2492-93.
In cases decided subsequent to Pearce, the United States Supreme Court reasoned that the presumption of vindictiveness does not apply unless there is a "`realistic likelihood'" of vindictiveness. Goodwin, 457 U.S. at 375, 102 S.Ct. at 2490 (quoting Blackledge v. Perry, 417 U.S. 21, 27, 94 *885 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974)). The opportunity for vindictiveness must "`impel the conclusion that due process of law requires a rule analogous to that of the Pearce case.'" Id. (quoting Blackledge, 417 U.S. at 27, 94 S.Ct. at 2102). "[A] mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." Id. at 384, 102 S.Ct. at 2494. "Accordingly, in each case, we look to the need, under the circumstances, to `guard against vindictiveness in the resentencing process.'" McCullough, 475 U.S. at 138, 106 S.Ct. at 979 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973)).
For example, in Moon v. Maryland, 398 U.S. 319, 90 S.Ct. 1730, 26 L.Ed.2d 262 (1970), the Court said there was no need to apply the presumption when the defendant conceded that vindictiveness played no part in the trial court's decision to enlarge the sentence. In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Court declined to apply the presumption in a two-tier judicial system "whereby a person charged with a misdemeanor may be tried first in an inferior court and, if dissatisfied with the outcome, may have a trial de novo in a court of general criminal jurisdiction but must run the risk, if convicted, of receiving a greater punishment." Id. at 105-06, 92 S.Ct. at 1955. The second trial and sentencing were conducted by a different court and judge in "a completely fresh determination of guilt and innocence." Id. at 117, 92 S.Ct. at 1961. The second court was not reviewing errors of the first trial, and may not even have known what sentence was imposed in the first proceeding, so it "can hardly be said to have `enhanced' the sentence." Id. at 117-18, 92 S.Ct. at 1961 (footnote omitted). In Chaffin v. Stynchcombe, 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973), there was no need to apply the presumption of vindictiveness when the jury was the sentencing authority at the second trial, and that jury was unaware of the prior sentence. In McCullough, 475 U.S. at 134, 106 S.Ct. at 976, no presumption of vindictiveness applied when the defendant, who elected to be sentenced by a jury after his first trial, chose to be sentenced by the judge after the retrial. The Court reasoned that the trial judge could not be presumed vindictive because she was the same judge who threw out the first conviction and ordered a new trial on the ground of prosecutorial misconduct. "`[U]nlike the judge who has been reversed,' the trial judge here had `no motivation to engage in self-vindication.'" Id. at 139, 106 S.Ct. at 979 (quoting Chaffin, 412 U.S. at 27, 93 S.Ct. at 1983). The fact that McCullough chose to be sentenced by the trial judge the second time around clearly affirmed the defendant's belief that the judge was fair and not vindictive. Id. The presumption also did not apply because the second sentence was imposed by a different sentencer. "In such circumstances, a sentence `increase' cannot truly be said to have taken place." Id. at 140, 106 S.Ct. at 979. Had the presumption applied, the judge's reasons to impose a more harsh sentence would have overcome the presumption, because the judge heard new evidence in the second trial from two witnesses, who did not testify at the first trial, describing how McCullough had slashed the victim's throat. Id. at 143-44, 106 S.Ct. at 981-82. In Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Court declined to apply a presumption of vindictiveness when the first sentence was based on a guilty plea and the second sentence followed a trial. The increase in the second sentence "is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than available after a trial." Id. 109 S.Ct. at 2205.
We agree with the district court's holding that the Pearce presumption of vindictiveness applies to Wemett's case. Here, the second sentencing was performed by the same judge whose error in the first sentencing prompted the resentencing, thus giving rise to a possible motive for self-vindication. McCullough, 475 U.S. at *886 139, 106 S.Ct. at 979. The difference between sentencing procedures did not alter the potential for vindictiveness. Even though Wemett elected a different method of resentencing, he did so in the apparent belief that the guidelines constrained the trial judge's discretion, unlike McCullough. Wemett never conceded that vindictiveness played no role in the resentencing, and there are no facts in the record to refute the applicability of the presumption. Moon, 398 U.S. at 319, 90 S.Ct. at 1730. This case clearly fits within the Pearce presumption.
The trial judge failed to overcome the presumption with proof of "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," Pearce, 395 U.S. at 726, 89 S.Ct. at 2081, because the judge in resentencing solely relied on evidence adduced at the trial five years earlier. Certainly Wemett's decision to be sentenced by a different procedure is not the kind of "identifiable conduct" envisioned by the Court in Pearce to justify a more harsh sentence. To the contrary, the Court's decisions clearly indicate that objective information about subsequent conduct includes, for example, new evidence presented to the sentencer about the crime, McCullough, 475 U.S. at 134, 106 S.Ct. at 976, or evidence of an intervening conviction. Wasman, 468 U.S. at 559, 104 S.Ct. at 3218. No such evidence was put before the sentencer here. Therefore, we conclude that the trial court violated Wemett's guarantee of due process of law, and we approve the portion of the district court's decision that reversed the sentence.
Wemett also challenged the trial court's reason for departing from the guidelines in the 1988 resentencing. The record shows that Wemett, claiming to be an inspector of some sort, gained entry to the victim's home, threatened her, stole her billfold, and left. The next day, he returned to the victim's home with another man who pretended to have found her billfold. They entered the home and threatened the woman. Although the other man held the victim down, Wemett did not touch her. They fled when somebody came to the door. Our review of the record shows clearly that the victim suffered no physical or psychological trauma.
As its sole written justification for departure, the trial court stated the following, quoted below in its entirety:
1. The age and vulnerability of the victim  The victim in this case was an eighty-four year old female living alone. The Court finds that the age and extreme vulnerability of this particular victim which was known to the defendant made it possible for the defendant to terrorize the victim, not once, but twice within a twenty-four hour period. It was clear from the victim's demeanor and presence at trial, and the testimony presented by the State, that the defendant picked this victim strictly because of her helplessness.
(Citations omitted.)
The general rule in sentencing is to sentence within the guidelines; departure from the guidelines is the exception to the rule. See, e.g., Williams v. State, 492 So.2d 1308, 1309 (Fla. 1986). The exception of upward departure is intended to apply when extraordinary circumstances exist to "reasonably justify aggravating ... the sentence." Fla.R.Crim.P. 3.701(d)(11). See, e.g., State v. McCall, 524 So.2d 663, 665 (Fla. 1988); Hall v. State, 517 So.2d 692, 694-95 (Fla. 1988); Vanover v. State, 498 So.2d 899, 900-01 (Fla. 1986). It necessarily follows that a departure cannot be based on factors common to nearly all victims of similar crimes. Otherwise, the exception would swallow the rule. Previous decisions rendered by this Court, in a context similar to that presented here, support this position.
For example, in Williams, the defendant was convicted of aggravated battery with a deadly weapon. We rejected as a ground for departure the fact that the "the defendant stabbed the victim while she was sleeping and therefore more vulnerable," holding that vulnerability of the victim "alone is not a clear and convincing reason to depart." 492 So.2d at 1309. We resolved analogous situations in similar fashion *887 in Mathis v. State, 515 So.2d 214 (Fla. 1987), and Lerma v. State, 497 So.2d 736 (Fla. 1986), receded from on other grounds, State v. Rousseau, 509 So.2d 281, 284 (Fla. 1987). In Mathis, we rejected a departure predicated on the fact that the victims of an armed robbery were female and working alone at night. We reasoned that "victims' defenselessness is common to nearly any armed robbery," and "gender of the victim, in and of itself, [is not] an appropriate reason for departure." Mathis, 515 So.2d at 216. Likewise, in Lerma, the trial court departed from the guidelines in a sexual battery case on the grounds that "[t]he victim was an especially susceptible female," being a "slight female, weighing approximately 108 lbs., while the defendant is a stocky, muscular male." Lerma, 497 So.2d at 738. We rejected that as a reason for departure, holding that helplessness of a sexual battery victim cannot be a valid reason to depart because "unfortunately, the vast majority of victims of sexual battery are virtually helpless." Id. at 739.
Some of the same concerns we had in Williams, Lerma, and Mathis also are present here. Just as almost any female armed-robbery victim could be considered defenseless to a bigger, stronger male, or almost every female sexual-battery victim can be considered helpless when attacked, almost every elderly person could be considered helpless and vulnerable to a younger, stronger assailant such as Wemett. Vulnerability is not a clear and convincing reason to depart from the guidelines when the victim's helplessness is common to nearly all similar crimes. Were we to allow the departure here based solely on age-related vulnerability, virtually every defendant who assaults an elderly person or a child would qualify for a departure sentence regardless of the nature or severity of the offense. These crimes are reprehensible, but such a rule would defeat the purpose and spirit of the guidelines.
It may be possible for a trial court to combine age-related vulnerability with other substantial factors to establish a clear and convincing reason for departure if those factors together, proved beyond a reasonable doubt, show that the defendant was peculiarly dangerous, or the criminal act was extraordinary or egregious.[3] However, the trial court relied on no such factors in this case, and the record reflects that none existed. We conclude that the written reason for departure was not clear and convincing. See State v. Mischler, 488 So.2d 523 (Fla. 1986), clarified on other grounds, State v. Rousseau, 509 So.2d 281 (Fla. 1987).
For the aforementioned reasons, we approve that part of the district court's decision that found a due process violation, but we quash the portion of the decision that held valid the trial court's reason for departing from the guidelines. This cause is remanded to the district court with instructions to order the circuit court to resentence Wemett within the guidelines, consistent with this opinion.
It is so ordered.
KOGAN, J., concurs.
SHAW, C.J., concurs specially with an opinion, in which GRIMES, J., concurs.
McDONALD, J., concurs specially with an opinion, in which OVERTON, J., concurs.
EHRLICH, J., dissents.
SHAW, Chief Justice, concurring specially.
The threshold question is whether the trial court's reason for departure is valid. I concur in the majority's conclusion that age-related vulnerability is an invalid reason under the facts of this case. Because the majority, unlike the district court, answered this question in the negative, it is *888 unnecessary to go on to answer the certified question or to engage in its analysis under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). I would do neither. I expressly disagree with the majority's Pearce analysis.
I do not believe that a Pearce violation took place. The presumption of vindictiveness announced in Pearce is inapplicable in cases where there is no real chance that the court imposed extra punishment to retaliate for a successful appeal:
While the Pearce opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." ... [W]e have limited its application .. . to circumstances ... in which there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.
Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 2204-05, 104 L.Ed.2d 865 (1989) (citations omitted; emphasis added). In the instant case, no real likelihood of vindictiveness exists, as the district court pointed out:
Our examination of the record in this case has yielded nothing that would suggest that the trial court's imposition of two life sentences, as opposed to the former 260-year sentence with retained jurisdiction for 130 years, was motivated by vindictiveness. Rather, the record indicates the trial court's intent at resentencing was the same as it had been at the time the original sentences were imposed, i.e., to assure that appellant remained incarcerated for the remainder of his life.
Wemett v. State, 547 So.2d 955, 958 (Fla. 1st DCA 1989). To my mind, it is clear that had the judge been able to impose a life sentence without the possibility of release originally, he would have done so. His imposition of that sentence on remand can hardly be viewed as an attempt to punish Wemett for his appeal.
GRIMES, J., concurs.
McDONALD, Justice, specially concurring.
I am satisfied that the trial judge's intention, as manifested by the original sentence in this case, was to insure the lifetime incarceration of Wemett. Thus, it would be easy to suggest that the two life sentences imposed on resentencing were no greater than the original sentence. I agree with the reasons expressed in the majority opinion, however, and conclude that two no-parole lifetime sentences imposed under the sentencing guidelines are technically greater than Wemett's original sentence. Because of the gain-time currently available, any sentence for a term of years is likely to be much less than the original sentence.
I dissent from the majority's holding that the principle enunciated in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), was violated. The district court of appeal correctly noted:
Our examination of the record in this case has yielded nothing that would suggest that the trial court's imposition of two life sentences, as opposed to the former 260-year sentence with retained jurisdiction for 130 years, was motivated by vindictiveness. Rather, the record indicates the trial court's intent at resentencing was the same as it had been at the time the original sentences were imposed, i.e., to assure that appellant remained incarcerated for the remainder of his life.
Wemett v. State, 547 So.2d 955, 958 (Fla. 1st DCA 1989). On the issue of vindictiveness, I disagree with the majority.
Resentencing would still be required if the grounds for departure are inadequate. On this issue I agree with the majority's conclusions that age and vulnerability alone are not clear and convincing reasons for exceeding a recommended sentence. Age and vulnerability, when coupled with additional circumstances, can meet that *889 standard. This conclusion has already been reached by the district courts. E.g., Bell v. State, 522 So.2d 989 (Fla. 1st DCA 1988) (departure valid when elderly woman received substantial injury in a pursesnatching); Byrd v. State, 516 So.2d 107, 108 (Fla. 4th DCA 1987) ("Neither advanced age alone, nor the victim's helplessness or vulnerability to criminal activity are sufficient as clear and convincing reasons for upward departure from the sentencing guidelines."); Guzie v. State, 512 So.2d 289, 290 (Fla. 1st DCA 1987) ("no showing that the victim here was any more vulnerable than a person who may be younger and/or stronger"); Grant v. State, 510 So.2d 313 (Fla. 4th DCA 1987) (age and vulnerability, in light of psychological trauma and breach of trust by defendant, justified departure); Hadley v. State, 488 So.2d 162 (Fla. 1st DCA 1986) (elderly victim, physical attack, verbal abuse causing psychological trauma); Moore v. State, 468 So.2d 1081 (Fla. 3d DCA 1985) (elderly victim beaten, theft caused severe economic and emotional hardship). This rule must be carefully applied and is dependent on the circumstances of each case.
As noted by the majority, Wemett gained entry to the victim's home under false pretext, claiming to be some kind of official inspector. He then threatened her and stole her wallet. He returned the next day with a companion who physically held the victim while Wemett searched her house for items of value to steal. Wemett and his companion fled when a young neighbor appeared at the door. The victim was not physically injured and did not exhibit any unusual emotional symptoms.
The requisite additional factors necessary to sustain a departure because of age and vulnerability do not appear by clear and convincing evidence. I therefor concur in the result reached by the majority.
OVERTON, J., concurs.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] We speak of due process here without distinguishing between due process rights under the fourteenth amendment of the United States Constitution, and due process rights guaranteed by article I, section 9 of the Florida Constitution. Because the parties did not raise the distinction, we find no need to explore the distinction in this case.
[3] We note that the district courts in many opinions have addressed the issue of departure from the guidelines due to a victim's age-related vulnerability. See, e.g., Graham v. State, 557 So.2d 669 (Fla. 5th DCA 1990); LeFresne v. State, 526 So.2d 176 (Fla. 2d DCA 1988); Bell v. State, 522 So.2d 989 (Fla. 1st DCA 1988); Byrd v. State, 516 So.2d 107 (Fla. 4th DCA 1987); Moore v. State, 468 So.2d 1081 (Fla. 3d DCA 1985). The weight of authority supports the conclusion we reach today.