667 So.2d 299 (1995)
Sandra Jean SMALL, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1342.
District Court of Appeal of Florida, First District.
September 22, 1995.
Order Granting Clarification November 16, 1995.
Nancy A. Daniels, Public Defender, Kathleen Stover, Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General, Patrick Martin, Assistant Attorney General, Tallahassee, for appellee.
REYNOLDS, Associate Judge.
The appellant in this case entered a plea to the charge of second-degree murder of her 35-month-old child. She signed a written plea agreement with no agreement as to sentence. While the maximum penalty allowed by law for second-degree murder is a term of years not exceeding life (section 782.04(2), Florida Statutes (1993)), the sentencing guidelines score for the appellant reflected a recommended sentence of 12 to 17 years and a permitted sentence of 7 to 22 years. Following a sentencing hearing, she was sentenced to 35 years in prison, followed by 5 years' probation, with a recommendation for psychological counseling and parenting classes. The court entered a written departure order giving the following reasons for departure from the guidelines: (1) Violation of her parental trust; (2) the severity and the excessive force used; and (3) the helplessness and vulnerability of the victim.
On the morning of October 30, 1993, the appellant's son Christopher, was playing with some other children in the living room when the appellant was awakened by their noise. The appellant got up out of bed several times and eventually took the children's toys away. Awakened again, she proceeded to the living room and because she could not find a belt, *300 she picked up a boot and struck Christopher several times with it. After striking Christopher in the living room, she then ordered him to his bedroom. She noticed that he was shaking but thought it was because he was cold as a result of wetting his pants. When she heard him "holler out," she called Christopher to come to her in the bedroom, at which point she began striking him again with the boot. A portion of her statement reads as follows:
I started popping him on the butt with the boot. He started twisting and turning. He went forwards toward the table and I pulled him back. Then he turned and I remember trying to pop his butt and he moved, so I hit his right side by accident. I remember doing that twice. Then I noticed that he was shaking even harder than he was before, that's when I stopped spanking him. He broke a lose from me and ran backwards into that table. Then he fell onto the floor. Then he was gasping for breath. I called him and called him and called him and he couldn't get up. He just looked at me and closed his eyes, then opened them and closed them again. He was looking like he was looking through me. When he didn't get up that's when I picked him up and squeezed him to try and make him breathe since he was gasping for breath. I don't know how to do CPR that's why I squeezed him. I laid him on the floor by the green lazy-boy chair then I called Nathan and told him that something was wrong with Christopher, then he came into the room.
The Emergency Medical Services were called, and the child was taken to the hospital where he was pronounced dead. The appellant was held overnight in the hospital for observation as she was almost six months pregnant.
First, we consider the issue of violation of parental trust as a basis for an upward departure from the guidelines. In Davis v. State, 517 So.2d 670 (Fla. 1987), the appellant pled guilty to second-degree murder and the use of a firearm in the commission of a felony. The appellant in Davis had shot her husband in his sleep and then left the home without calling for help. The supreme court in reversing the trial court's upward departure based on an "abuse of trust of a family relationship" stated,
[W]ere we to uphold a departure from the guidelines in this case based on the abuse of the trust of a family relationship, it would serve as authority to do the same in most cases involving the killing of a spouse or other family member. If the sentencing commission had intended to impose a harsher sentence on those convicted of second degree murder when the victim was the defendant's spouse, it would have created a separate category for spousal homicide for purposes of establishing a score under the sentencing guidelines. Cf. [State v.] Mishler [Mischler], 488 So.2d 523 at 526 [(Fla. 1986)]. Although abuse of the trust of a family relationship may justify departure in some instances, this is not a clear and convincing reason for departure under the facts at hand.
517 So.2d at 674.
In this case, the appellant realized that she had injured the child, stopped striking him, attempted to resuscitate the child, notified her live-in boyfriend of the child's difficulty in breathing, and Emergency Medical Services were called to the home. Aside from the beating itself, this is everything a person in a familial relationship could be expected to do under these circumstances. It cannot be said, under the facts of this case, that a breach of parental trust is a clear and convincing reason for an upward departure from the guidelines.
Next, we consider the severity and excessive force used as a ground for an upward departure from the guidelines. The court in its written order stated,
The Court's second reason for imposing a departure sentence is that the defendant who is 5'8" and weighs in excess of 200 lbs. hit her son with such severity and excessive force that his internal organs were ripped and ruptured. She used her boot to hit his lower body with such force that his liver was torn and heart muscle and sac surrounding the heart filled with blood ultimately causing his heart to fail and his death.
*301 In State v. McCall, 524 So.2d 663 (Fla. 1988), the supreme court held in a first-degree murder case that
[A] trial court may validly depart from a recommended guidelines sentence when the conduct of the defendant is so extraordinary or egregious as to be beyond the ordinary case.

524 So.2d at 665 (emphasis added). In Lettman v. State, 526 So.2d 207 (Fla. 4th DCA 1988), rev. denied, 544 So.2d 1025 (Fla. 1989), the court reversed a departure sentence for third-degree murder of a three-year-old child by her father, stating,
[D]eparture based on abuse of familial trust is permissible but, as suggested by the supreme court, only under the most barbaric and grotesque circumstances.

526 So.2d at 208 (emphasis added). The facts in Lettman are discussed in Robinson v. State, 589 So.2d 1372, 1374 (Fla. 4th DCA 1991), rev. denied, 599 So.2d 1280 (Fla. 1992):
[T]he briefs reveal that the victim had been beaten with a belt repeatedly over a long period of time and that her "remarkably swollen" brain was consistent with being thrown against a wall.
In Robinson, the appellant pled to second-degree murder and aggravated child abuse. The court held:
Because second-degree murder, by definition contemplates acts evincing a depraved mind and acts of such cruelty that any rational being would know they would cause death, and because Lettman and the present case represent a similarity of ongoing abuse, we are precluded from approving the trial court's action.
589 So.2d at 1374. The facts in Robinson are as follows:
[T]he medical examiner testified that the seventeen-day-old baby died of blunt trauma to the head. In addition he identified repetitive biting injuries to the baby's face and cheek area and blunt non-penetrating injuries to the babies buttocks (spanking). There was no evidence that the injuries to the brain were caused by anything other than a hand.
The lead investigative detective on the case testified that appellant admitted to striking the baby numerous times, spanking her for soiling her diapers, hitting her on the head and body when she would cry during the night and biting her on the cheeks. Appellant admitted to her that the actions occurred on a daily basis from the time the baby was released from the hospital, but indicated to her that she did not mean to hurt the baby. When paramedics arrived, the appellant was clutching her baby daughter and was hysterical when they tried to take the baby.
589 So.2d at 1373.
In the case under consideration, the medical examiner testified that the body of the child appeared well nourished and well developed. The autopsy revealed that there was no evidence of past abuse and more importantly, as it relates to the events surrounding this case, that there were no signs of external injury to the child. Further, he testified that the fatal injury could have been caused by a single blow or successive blows and that the cause of death was a rupture of the heart caused by a sudden hydraulic ram effect in the heart that burst the heart and caused hemorrhaging in the rest of the body. In describing the rupture he stated that with a sudden blow to the abdomen a very large vein, the inferior vena cava, is suddenly compressed and "there is a hydraulic ram effect delivered through the liver where the veins are enormous, delivered to the right atrium and the right atrium just explodes." He also testified that the most common cause of a rupture of the right atrium is automobile accidents where there is a very sudden and severe blow to the abdominal cavity.
In mitigation of sentence, the trial court also considered but rejected the following facts: There was no history of abuse of Christopher; the appellant's family upbringing and possible use of corporeal punishment in her home; appellant may have suffered abuse as a child; appellant may be isolated and without a family support group or friendship group; appellant's partner may not help her raise the children and he may be passive in their relationship; at the time of the incident, appellant was pregnant, and the possible effect of resulting hormonal changes; and finally, her limited education and lack of *302 knowledge that such actions could be so deadly.
Under all the circumstances of this case, it cannot be said that the facts are barbaric and grotesque (Lettman) nor that the circumstances are so extraordinary or egregious as to be beyond the ordinary case (Robinson). Therefore, although it remains a tragic murder, we must reverse the ruling of the trial court, finding that it presented a clear and convincing reason for an upward departure from the guidelines.
The final ground to consider is the helplessness and vulnerability of the victim as a grounds for an upward departure from the guidelines. The court in its written order stated:
The Court is aware that standing alone, helplessness, vulnerability and defenselessness cannot support the imposition of an upward departure sentence.
The law is clear, helplessness and vulnerability alone cannot be sustained as a reason for upward departure. As stated in Wemett v. State, 567 So.2d 882 (Fla. 1990):
It necessarily follows that a departure cannot be based on factors common to nearly all victims of similar crimes. Otherwise, the exception would swallow the rule.
... .
Vulnerability is not a clear and convincing reason to depart from the guidelines when the victim's helplessness is common to nearly all similar crimes. Were we to allow the departure here based solely on the age-related vulnerability, virtually every defendant who assaults an elderly person or a child would qualify for a departure sentence regardless of the nature or severity of the offense.
567 So.2d at 886, 887. The present state of the law requires us to reverse as to this factor where there are no other clear and convincing reasons to attach to the child's helplessness and vulnerability.
Accordingly, we reverse the sentence and remand this case to the trial court for resentencing within the guidelines.
JOANOS, J., concurs.
WEBSTER, J., concurs in result with written opinion.
WEBSTER, Judge, concurring in the result.
The trial court gave three reasons for its upward departure sentence: violation of parental trust, use of excessive force and age and vulnerability of the victim. It is relatively clear that neither violation of familial trust alone, nor violation of familial trust combined with age and vulnerability of the victim, will support an upward departure sentence. See, e.g., Wemett v. State, 567 So.2d 882 (Fla. 1990); Hall v. State, 517 So.2d 692 (Fla. 1988); Davis v. State, 517 So.2d 670 (Fla. 1987); Clifton v. State, 608 So.2d 890 (Fla. 4th DCA 1992); Robinson v. State, 589 So.2d 1372 (Fla. 4th DCA 1991), review denied, 599 So.2d 1280 (Fla. 1992); Lettman v. State, 526 So.2d 207 (Fla. 4th DCA 1988), review denied, 544 So.2d 1025 (Fla. 1989). Use of excessive force may be sufficient to support an upward departure sentence, provided that the force is extraordinary, producing a particularly brutal, barbaric or grotesque result. See, e.g., State v. McCall, 524 So.2d 663 (Fla. 1988); Hall v. State, 517 So.2d 692 (Fla. 1988); Brown v. State, 611 So.2d 540 (Fla. 3d DCA 1992), review denied, 621 So.2d 1065 (Fla. 1993); Allen v. State, 604 So.2d 23 (Fla. 5th DCA 1992).
The evidence as to how the tragic death in this case occurred is found in two statements given by appellant following her arrest, and in the opinion testimony of the medical examiner, which was given at the sentencing hearing. That evidence is accurately summarized in Judge Reynolds' opinion. Although I acknowledge that appellant's actions were reprehensible, I am unable to say that, as a matter of law, they were sufficiently brutal to support an upward departure from the maximum sentence of 22 years permitted by the guidelines. See, e.g., Allen v. State, 604 So.2d 23 (Fla. 5th DCA 1992); Robinson v. State, 589 So.2d 1372 (Fla. 4th DCA 1991), review denied, 599 So.2d 1280 (Fla. 1992); Lettman v. State, 526 So.2d 207 (Fla. 4th DCA 1988), review denied, 544 So.2d 1025 (Fla. 1989). See generally Wilson v. State, *303 567 So.2d 425, 427 (Fla. 1990) ("[a]ny doubt as to the applicability of a departure reason must be resolved in favor of the defendant"). Accordingly, I agree that we are constrained to reverse appellant's departure sentence, and to remand for a sentence within the guidelines. Therefore, I concur in the result.

OPINION ON MOTION FOR CLARIFICATION
REYNOLDS, Associate Judge.
Appellee's motion for clarification is granted to the extent that we did not intend to make any prospective ruling on section 921.0016(3)(j), Florida Statutes (1993), which authorizes consideration of victim's vulnerability "due to age or physical or mental disability," but is not applicable to crimes committed before January 1, 1994. The incident involved in the case under consideration occurred in October 1993.
In all other respects, the previous opinion of this court is readopted.
JOANOS and WEBSTER, JJ., concur.