791 So.2d 568 (2001)
Charles Edward CARTER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-1325.
District Court of Appeal of Florida, Third District.
August 8, 2001.
*569 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Erin K. Zack, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and SORONDO, J., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
Charles Edward Carter appeals the denial of his motions to correct illegal sentence. On the following analysis, we affirm. In 1987, Carter was tried and *570 convicted on charges of aggravated battery, robbery with a deadly weapon, kidnaping with a weapon, attempted first-degree murder, and armed burglary of an occupied conveyance with an assault or battery, all stemming from the 1986 abduction of victim, Iris Mata. See Carter v. State, 550 So.2d 1130, 1131 (Fla. 3d DCA 1989). The evidence demonstrated that Carter had brutally assaulted Mata, broken her neck, paralyzed her and left her for dead in a canal. After considering testimony as to the grisly details of the crime and of the victim's suffering, the trial judge presiding over Carter's 1987 sentencing hearing determined that a departure sentence was appropriate.[1], [2] The judge imposed a departure sentence as follows: 15 years for aggravated battery, life imprisonment for armed kidnaping, 30 years in prison for attempted first degree murder, and life imprisonment for burglary of a conveyance. As to the armed robbery conviction, the judge imposed a suspended life sentence, to run concurrent with a life term of probation after his release from prison.[3]
The court entered an order explaining that its upward departure sentence was based on four factors, the vulnerability of the victim due to her size,[4] the victim's extraordinary suffering, the callous and vicious nature of the attack,[5] and the trauma the victim suffered after the offense. The departure order further provided: "Were an appellate Court to find reason number one [the particular vulnerability of the victim] invalid then the sentence will be 40 years on all counts concurrent."
Following his exhaustion of remedies in state court, Carter filed a petition for writ of habeas corpus in the federal system. After considering Carter's claims, the Southern District Court remanded for resentencing solely on the issue of ineffective assistance of counsel based on defense counsel's failure to object to the trial court's statement that "a life sentence doesn't mean life."
The magistrate's report noted that the order remanding for resentencing "would imply no recommendation as to what sentence should be imposed, and would not preclude reimposition of [Defendant's] current life sentence should the state court in its discretion determine that sentence to be appropriate." Pursuant to the Southern District's final judgment, the Defendant's sentence was vacated and a hearing on resentencing was held on January 27, 2000.
*571 At this second sentencing hearing, the Defendant requested a guideline sentence. The successor trial judge after hearing testimony from the victim, the Defendant, and eleven other witnesses including the Defendant's mother, father, uncle, and minister, concluded that an upward departure was warranted. The judge found that there were "more than just" reasons for imposing a departure sentence. He described the victim's experience as "nothing short of horrific" and found the defendant's actions fit the definition of heinous, atrocious and cruel. The judge found the victim suffered "extraordinary physical and emotional trauma and physical injury and was treated with particular cruelty," and sentenced Defendant to 15 years for aggravated battery, 13 years with credit for time served for armed robbery, life imprisonment for both armed kidnaping and burglary of a conveyance, and 30 years in prison for attempted first degree murder. The judge's order provided the sentences were to run concurrently and credited Defendant with credit for time served. Defendant's subsequent motions to correct illegal sentence were denied and this appeal followed.
Defendant raises multiple arguments on appeal, only one of which merits discussion. He contends that the trial court erred in departing from the sentencing guidelines and imposing a sentence of life imprisonment stating two grounds for departure, where the predecessor sentencing judge found that these same two reasons supported only a 40 year sentence. We disagree. Defendant's resentencing was de novo. See Teffeteller v. State, 495 So.2d 744, 745 (Fla.1986); Baldwin v. State, 700 So.2d 95 (Fla. 2d DCA 1997). His prior sentence, vacated pursuant to the federal court's order, "is a nullity." See Morton v. State, 789 So.2d 324 (Fla. 2001). "[A] resentencing is a `completely new proceeding,' and the trial court is under no obligation to make the same findings as those made in a prior sentencing proceeding." Id.
The option of departure is not foreclosed on resentencing "in a case where the error [that necessitated the resentencing] does not relate to the decision to depart or the reasons supporting that decision." Blackwelder v. State, 570 So.2d 1027, 1029 (Fla. 2d DCA 1990). Accordingly, the decision of whether circumstances exist to reasonably justify a departure sentence remained within the trial court's discretion. We recognize that the trial court's power to depart from the guidelines upon resentencing is not unlimited. Id. The Florida Supreme Court has held that policy requires that a resentencing court is not at liberty to fashion new reasons in support of the departure. See Shull v. Dugger, 515 So.2d 748 (Fla.1987). "To hold otherwise may needlessly subject the defendant to unwarranted efforts to justify the original sentence and also might lead to absurd results. One can envision numerous resentencings as, one by one, reasons are rejected in multiple appeals." Id. at 750; see also Pope v. State, 561 So.2d 554, 556 (Fla.1990). However, the court did not rely on any departure reasons in 2000 that the trial court did not also rely upon in 1987. Furthermore, the Defendant's sentence in 2000 is the same sentence that was originally imposed, that is, life imprisonment. Despite Defendant's claim otherwise, there is no double jeopardy violation. The Defendant argues that the 1987 sentence was really a 40-year sentence because the trial court based the departure above 40 years on victim vulnerability, an invalid basis for a departure from the guidelines. This fact is irrelevant. The original sentence was for life imprisonment, and not for a 40 year term. When the Defendant petitioned for resentencing *572 pursuant to his federal petition for habeas corpus, he asked for his original sentence to be vacated. The trial judge complied. The judge conducted his own inquiry into the aggravating and mitigating factors of the case, and imposed a sentence that did not exceed that originally imposed, and which was based on aggravating factors that were also relied upon in the original sentencing. The resentencing was therefore proper.
In general, when a Defendant's conviction is set aside and he is retried and resentenced, a judge may impose a harsher sentence than was originally imposed only if the court states its reasons for doing so and bases its decision on information regarding the defendant's conduct that took place after the defendant's original sentencing. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This, however, is not a Pearce-type case. No harsher sentence was imposed and no valid claim of vindictiveness can be made. See Van Loan v. State, 779 So.2d 497, 500 (Fla. 2d DCA 2000), review denied, No. SC01-55 (Fla. June 21, 2001). See also Texas v. McCullough, 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986)(reexamining Pearce rule and finding that the presumption of vindictiveness as set forth in Pearce was inapplicable where "different sentencers assessed the varying sentences"); Graham v. State, 681 So.2d 1178 (Fla. 2d DCA 1996)(finding that, because the second sentence was not imposed by the same judge who imposed the original sentence, the defendant has the burden of proving actual vindictiveness).
Here the successor judge considering the convictions and surrounding facts ordered the sentences he concluded were appropriate. Those sentences are no more harsh than the sentences imposed in Defendant's original sentencing and are certainly supported by record evidence. Accordingly, the order under review is affirmed.
NOTES
[1] The recommended range of the sentencing guidelines was 22 to 27 years.
[2] The record demonstrated that both defense counsel and the judge were of the mistaken belief that if the court departed upward and sentenced Carter to life in prison, the defendant would not actually serve life in prison but would in fact be released someday.
[3] At the December 15, 1987 sentencing hearing, the trial judge stated that "a life sentence doesn't mean life...."
[4] It is clear that victim vulnerability may not justify an upward departure. See Mathis v. State, 515 So.2d 214 (Fla.1987).
[5] With regard to this reason, the court's order detailed the following:

The attempted first degree murder involved several attempts to submerge the victim. The victim was paralyzed, numb and was stabbed several times. The defendant shook the victim in the canal to assure himself she was dead. From the inception, this was a unique case as the defendant ripped the victim's clothes off, severely beat her and taped her. Furthermore, the evidence shows factors not inherent in the crimes of which the defendant was convicted....