832 So.2d 937 (2002)
Carlos E. MIRANDA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-156.
District Court of Appeal of Florida, Third District.
December 26, 2002.
*938 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Richard E. Doran, Attorney General, and Michael J. Neimand, Assistant Attorney General, and Frank Kearns, Legal Intern, for appellee.
Before SCHWARTZ, C.J., and COPE, and GODERICH, JJ.
COPE, J.
Carlos E. Miranda appeals the sentences imposed after his guilty plea to the charges of second degree murder, arson, and attempted second degree murder. We affirm in part and reverse in part.
Defendant-appellant Miranda was charged with the second degree murder of his girlfriend, Andrea Triana, and attempted second degree murder of Andrea's nine-year-old daughter, Rebecca Triana. The defendant was extradited from Costa Rica. Under the terms of the extradition agreement with the Costa Rican government, the maximum term of imprisonment which could be imposed on the defendant was fifty years.
The defendant eventually entered a guilty plea with sentencing to be left up to the trial court. The trial court took evidence regarding the details of the crime and the injuries inflicted. The court rejected the defendant's request for a guidelines sentence, and imposed a departure sentence of fifty years.
In entering the departure sentence, the trial court stated in part:
The facts of this case show that Andrea Triana was murdered, that she was stabbed nineteen times, with one fatal wound. I think the record is sufficiently clear and reasonable for this court to conclude that the circumstances causing Andrea Triana's death were sufficiently heinous, egregious and cruel to justify this court's upward departure from the sentencing guidelines.
On this appeal, the defendant argues that this departure reason was legally insufficient. We reject the defendant's argument on this point, and conclude that the departure reason is permissible and amply supported.
The medical examiner testified that the victim's wounds were consistent with the three hundred pound defendant pinning the one hundred sixteen pound victim on the bed, and repeatedly stabbing her in *939 the head and neck as she moved her head from side to side attempting to avoid the knife. Of the nineteen stab wounds, eighteen were painful but superficial. The fatal wound was a stab wound to the chest, which punctured a lung.
The medical examiner was not able to say in what order the stab wounds were inflicted, but it makes no difference to the analysis. The medical examiner testified that it would have taken several minutes for the victim to bleed to death after being stabbed in the chest. Even if the first blow was the stab wound to the chest, the victim in all likelihood was alive, conscious, and attempting to move her head away from the knifewith which the defendant stabbed her eighteen times. Simply put, the defendant tortured the victim.
The medical examiner testimony was, in part:
Q. Were there any defensive wounds on the rest of her body?
A. First of all, defensive wounds are those wounds sustained by a victim after trying to protect themselves. Defense injuries are typically on the hands, or on the back of the hands, or the palms and fingers, or on the forearms or upper arms. This young lady did not have any of these defense injuries.
Q. But she had wounds to each side of her head and to the top of her head?
A. Yes.
Q. Would that be consistent with a person receiving injuries as they move their head from left to right, left to right, up and down being that she also has wounds to her neck?
A. Yes, that would be entirely consistent with moving her head around.
Q. Would it also been consistent with someone being unable to move their hands?
A. Yes.
Q. Let me ask you this hypothetically, Dr. Lew. If a 116-pound woman is on the bed, possibly sleeping and a 300-pound man straddled her, got on top of her with one portion of his leg or body on her left side and the other portion of his body or left on the right, sitting on top of her, would the wounds be consistent with a 116-pound woman lying down trying to help herself?
A. Yes, the wounds on this young woman would be entirely consistent for a 116-pound person being pinned down by a much larger person.
Q. During the time that those wounds were inflicted, would she be feeling the pain of them?
A. Yes.
Q. And it would take a few minutes for her to die?
A. Yes.
Q. Three minutes?
A. Possibly.
Q. Five minutes?
A. Possibly.
Q. What was the manner of Andrea Triana's death?
A. The manner of death was homicide.
Q. What was the cause of her death?
A. The cause of her death was multiple stab wounds.
Q. No further questions, Judge.
THE COURT: Cross?
CROSS EXAMINATION
....
Q. And one of the head wounds, I believe classified as L, that wound was severe enough to be associated with a skull fracture. Is that correct?
A. Yes, that is correct.
Q. There are a number of factors that might leave someone unconscious *940 while the wounds are being inflicted, is that correct?
A. Yes, that is correct.
Q. Now you stated on direct examination that you cannot tell the order in which these wounds are inflicted, that is correct?
A. Yes, that is correct.
Q. Based on that fact, isn't it true that you cannot tell for how long Ms. Triana was conscious and feeling pain?
A. That is correct.
Q. I don't have anything further.
THE COURT: Re-direct?
MS. LEVINE: Yes, your Honor.

RE-DIRECT EXAMINATION
BY MS. LEVINE
Q. In order for Ms. Triana to move her head from side to side, she would have been conscious?
A. Likely, yes.

RE-CROSS-EXAMINATION
BY MR. COHEN.
Q. Doctor, that's assuming that that happened though no one knows, is that correct.
A. If no one knows what happened?
Q. If she was moving her head from side to side, we don't know that for sure?
A. No. we don't know that for sure.
(Emphasis added).
"The level of proof necessary to establish facts supporting a departure from a sentence under the guidelines is a preponderance of the evidence." § 921.001(6), Fla. Stat. (1993).[1]
The defense argues that there is no evidence the victim was alive while she was being held down and stabbed repeatedly. We reject that argument. The medical examiner testimony adequately establishes a factual basis for the conclusion that the victim was conscious, held down, and struggling to avoid the defendant's knife as he repeatedly stabbed her in the face and neck.
As a legal matter, the case law has repeatedly recognized that a departure sentence is justified where the circumstances are sufficiently heinous, egregious or cruel.
The defense relies heavily on Davis v. State, 517 So.2d 670 (Fla.1987), but that case supports the departure here. The Florida Supreme Court stated that "cruelty towards the victim may justify departure in some circumstances...." Id. at 673. In explaining why a departure was not justified in Davis, the court stated among other things, "There was no evidence that the victim was aware of the impending attack." Id. In Davis, the victim was killed from multiple gunshot wounds. In the present case, by contrast, the evidence supports the conclusion that the victim was well aware of the approaching knife, struggled, but was unable to save herself.
A case similar to the present one is Semenec v. State, 698 So.2d 900 (Fla. 4th DCA 1997). A departure sentence was upheld there where the defendant and multiple co-defendants "stood with others circling [the victim] Kent while the codefendants inflicted additional wounds." Id. at 902. See also Carter v. State, 791 So.2d 568 (Fla. 3d DCA 2001); Johnson v. State, 695 So.2d 787 (Fla. 1st DCA 1997); Weekley v. State, 584 So.2d 78, 80 (Fla. 3d DCA 1991); Vara v. State, 546 So.2d 1071 (Fla. 2d DCA 1989); Wright v. State, 538 So.2d 497, 499 (Fla. 3d DCA 1989); Orange v. State, 535 So.2d 691 (Fla. 3d DCA 1988).
The defendant relies on Lamond v. State, 500 So.2d 342 (Fla. 5th DCA 1986), *941 but that case is not on point. In Lamond there was no evidence that the victim was aware of her impending attack. Id. at 343. In the present case, the evidence supports the proposition that the victim was awake, aware, and struggling. We affirm the departure sentence.
With respect to the remaining issue on appeal, the State has confessed error. The State concedes that for a 1993 crime date, the offense of second degree murder with a weapon is classified as a life felony. See §§ 782.04(2), 775.087(1)(a), Fla. Stat. (1993). At that time the penalty for a life felony was life imprisonment or a term of years not exceeding forty. Id. § 775.082(3)(a); Ferguson v. State, 804 So.2d 411 (Fla. 4th DCA 2001); Redd v. State, 738 So.2d 978 (Fla. 5th DCA 1999). Since the fifty year term exceeds the legal maximum, the sentence on the second degree murder count must be reduced from fifty years to forty years. The defendant need not be present.
Affirmed in part, reversed in part, and remand for correction of sentence.
NOTES
[1] The crime date was December 30, 1993.