641 So.2d 1356 (1994)
Peter Anthony AUDANO, Appellant,
v.
STATE of Florida, Appellee.
No. 93-00494.
District Court of Appeal of Florida, Second District.
August 17, 1994.
*1357 Stuart C. Markman and James E. Felman, P.A., Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Asst. Atty. Gen., Tampa, for appellee.
RYDER, Acting Chief Judge.
Peter Anthony Audano seeks review of his conviction for three counts of committing a lewd and lascivious act upon a child under sixteen years of age in violation of section 800.04(3), Florida Statutes (1991), by committing an act defined as sexual battery under section 794.011(1)(h), Florida Statutes (1991), and one count of committing a lewd and lascivious act upon a child under sixteen years of age in violation of section 800.04(1), Florida Statutes (1991). We agree with the appellant that the trial court erred in admitting Williams[1] Rule evidence, and accordingly, we reverse for a new trial. Because other issues raised have merit and will undoubtedly arise during retrial, we also address the other evidentiary and sentencing issues.
At the jury trial, B.H., the alleged victim, testified that she resided in a foster home with nine to thirteen other girls. At thirteen she was the youngest girl there, and most of the others were sexually active. The foster mother, suspicious that B.H. was sexually experienced, asked two older girls to obtain information from B.H. regarding her sexual experiences and to secretly tape record the discussion. To elicit information from B.H., the older girls first discussed some of their sexual experiences. B.H. revealed that on a few occasions she had engaged in sexual activity, including intercourse, with a 41-year-old man, Mr. Audano.
*1358 As a result of this conversation, the authorities were called, and, approximately nine months later, the instant charges were filed. At trial, B.H. testified that she had consensual sexual intercourse and other sexual contact with Audano a few times over a two-month period. Audano unequivocally denied each of her accusations.
The state sought to corroborate B.H.'s story with an eight-year-old uncharged accusation against Audano that the state sought to introduce under section 90.404(1)(a), Florida Statutes (1993), the Williams Rule. Eight different witnesses gave testimony concerning this incident.
The incident allegedly occurred when Audano and his wife were visited by a former neighbor, Lisa, and her girlfriend, Amy, both twelve or thirteen years of age. During that visit, the state claimed that Audano peeked at Lisa while she showered and on a different occasion fondled her while his wife read "dirty" stories aloud. The state also contended that during the same weekend Audano used his finger to rip open an existing hole in the back of Amy's jeans while he tickled her. The allegations were investigated by both law enforcement and HRS, but the matter was closed without an arrest or any other action. Audano's wife testified that the allegations were untrue. Lisa admitted at trial that the investigating authorities did not believe her story. Lisa insisted that she told Amy of the fondling incident immediately after it occurred, and that this prompted them to run away from the Audano home the next morning. But Amy stated that Lisa never told her of the fondling until approximately eight years later when they discussed their upcoming testimony a couple of months before the trial. At trial, Lisa and Amy were questioned about evidence showing the real reason they left the Audano home was because they had stolen certain items.
The judge admitted the Williams Rule allegations over defense objections. She did not find that the collateral offenses had been convincingly established, but deemed the accusations' truth or falsity to be a jury question. The court applied a relaxed standard of admissibility employed only in cases involving child abuse in the family context on the theory that the instant charges were "akin to a familial abuse."
Kathryn Kuehnle, a child psychologist, was permitted to offer over repeated objections an opinion as to the truth of B.H.'s accusations. In a lengthy hypothetical question, the prosecutor summarized the trial evidence and asked whether such a claim of abuse would be "consistent with the disclosure of a false allegation." Dr. Kuehnle answered that in her expert opinion, "that type of disclosure is more consistent with a true allegation of sexual abuse."
The prosecutor also presented a registered nurse who testified that B.H. showed physical signs of having engaged in sexual intercourse, but she was unable to state whether she had been penetrated by a penis or some other object. The defense unsuccessfully sought to introduce evidence that the nurse's findings were attributable to sexual abuse by B.H.'s mother, not Audano. The record showed that B.H.'s mother had the opportunity to abuse her. At the age of five, B.H. was taken from her mother in Georgia and placed in foster care until she was seven when she moved to Florida to live with her great aunt. B.H. told a court-appointed psychologist that she continued to have intermittent contact with her mother until a few months before the trial.
Norma Jean Anderson, B.H.'s close friend and confidante and the mother of B.H.'s best friend, testified in a proffer that B.H. told her that her mother had sexually molested her. The trial judge excluded Anderson's testimony on the ground that it was irrelevant.
At sentencing, the trial judge scored the recommended sentencing range as nine to twelve years with a permitted range of seven to seventeen years. She departed from the guidelines, however, and sentenced Audano to thirty years' imprisonment followed by thirty years' probation.

I. WILLIAMS RULE EVIDENCE
Audano argues that the admission of Williams Rule evidence was reversible error. Before evidence of a collateral offense *1359 can be admitted under the Williams Rule, there must be clear and convincing evidence that the former offense was actually committed by the defendant. State v. Norris, 168 So.2d 541, 543 (Fla. 1964); Dibble v. State, 347 So.2d 1096, 1097 (Fla. 2d DCA 1977).
In determining the admissibility of collateral crime evidence, the trial court must make two determinations: (1) whether the evidence is relevant or material to some aspect of the offense being tried, and (2) whether the probative value is substantially outweighed by any prejudice. See §§ 90.402, 90.403 and 90.404(2), Fla. Stat. (1993).
The appellant urges first that the collateral accusations were not established by clear and convincing evidence. Moreover, even if the state could have proved the offense occurred, its admission would still be error because the allegation lacked the requisite unique similarity to the charged offenses, and the familial or custodial context exception to this requirement was inapplicable because all of the parties were unrelated.
We agree that the collateral accusations were not established by clear and convincing evidence. The stories were inconsistent. Although a conviction is not a prerequisite for admission of evidence of other crimes, Burr v. State, 550 So.2d 444, 446 (Fla. 1989), cert. granted and judgment vacated, 496 U.S. 914, 110 S.Ct. 2608, 110 L.Ed.2d 629 (1990), no offense was charged. The authorities did not believe the girls' stories at the time. Their stories do not yield the "firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established" required to meet the clear and convincing standard. Slomowitz v. Walker, 429 So.2d 797, 800 (Fla. 4th DCA 1983).
Even had this evidence met the clear and convincing standard, it would have been inadmissible because the collateral offenses and the charged offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses. Heuring v. State, 513 So.2d 122, 124 (Fla. 1987). Recently, in Feller v. State, 637 So.2d 911 (Fla. 1994), the Florida Supreme Court, citing Heuring, reiterated that requirement of similarity where the only commonalities were the type of offense and the involvement of young girls. The charged offense there involved allegations of several incidents of penial and digital penetration of his stepdaughter's vagina while she was unclothed inside the family dwelling; the collateral offense involved a single episode of touching on the outside of the child's clothing while she sat on the defendant's knee as they were fishing.
The charged offenses here of penial and digital penetration, oral vaginal stimulation and vaginal fondling are clearly dissimilar to the collateral offenses of peeking in a shower, ripping open an existing hole in a child's jeans or fondling while his wife read "dirty" stories.
In cases involving sexual battery within a familial situation, evidence of other sexual batteries on another family member may be admitted to corroborate the testimony of the victim that the defendant had committed the sexual abuse upon the victim. Heuring. Our decision in Hallberg v. State, 621 So.2d 693, 701-03 (Fla. 2d DCA 1993) (Altenbernd, J., dissenting in part), review denied, 634 So.2d 627 (Fla. 1994), addresses at length the case law interpreting the term "custodial" in the context of section 794.041, Florida Statutes (1991), sexual activity with a child by a person in familial or custodial authority. We concluded there that the statute "was intended to protect a child from a person who stands in, holds or occupies a position of authority in relation to the child regardless of whether an offensive act was committed within the scope of the duties and responsibilities that such a position of authority contemplates." Hallberg at 702. The appellant here was not charged with a violation of section 794.041, and a Williams Rule issue was not raised in Hallberg, but nonetheless, the analysis of the Hallberg decision on the term "custodial authority" is helpful. In contrast, in State v. O'Brien, 633 So.2d 96 (Fla. 5th DCA 1994), the court did not broaden the custodial exception where several young girls were molested when left in the care of the defendant by his sister who operated a babysitting service in their home.
*1360 Audano was a family friend of B.H.'s friend's family and he visited in their home frequently. The collateral offenses here occurred during a weekend visit which was sanctioned by the parents of one of the girls. The exercise of custodial authority is present, if temporary in nature.
Because we conclude, however, that the collateral offenses were not clearly and convincingly proved, we need not determine whether the close facts of this case support a relaxation of the similar acts requirement for Williams Rule evidence in the context of an exception based upon "custodial authority." We therefore determine that the trial court erred in allowing evidence of collateral acts and reverse for a new trial.

II. EXPERT WITNESS VOUCHING FOR CREDIBILITY OF ALLEGED VICTIM
Audano also complains that expert Kuehnle improperly bolstered the credibility of the alleged victim's testimony by testifying that the alleged victim's disclosure is "more consistent with a true allegation of sexual abuse." We do not find merit to the state's only argument that the appellant waived any argument on this point. The record shows that the appellant objected on numerous grounds including the ground that the expert's opinion bolstered the victim's credibility.
An expert's direct comment on the credibility of an alleged child victim of a sex offense is impermissible. State v. Townsend, 635 So.2d 949 (Fla. 1994); Tingle v. State, 536 So.2d 202, 205 (Fla. 1988); Rowles v. State, 613 So.2d 1335, 1336 (Fla. 2d DCA 1993); Rhue v. State, 603 So.2d 613, 614 (Fla. 2d DCA 1992). "[I]f relevant, a medical expert witness may testify as to whether, in the expert's opinion, the behavior of a child is consistent with the behavior of a child who has been sexually abused." Townsend at 958; Glendening v. State, 536 So.2d 212 (Fla. 1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). Pursuant to sections 90.702 and 90.703, Florida Statutes (1993), the relevancy of the expert's opinion is determined. If the expert's specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, she may offer an opinion about it.
The cases which support the trial court's ruling here generally involve very young victims who did not testify. Townsend (two-year-old victim did not testify); Glendening (three-and-a-half year old victim did not testify); North v. State, 65 So.2d 77 (Fla. 1952), affirmed, 346 U.S. 932, 74 S.Ct. 376, 98 L.Ed. 423 (1954) (victim deceased). In Glendening, the court noted that the expert's opinion testimony would be helpful to the jury in view of the age of the victim and the child's likely inexperience and inability to describe what happened.
Here, because the victim testified, that consideration is not present. This type of testimony is inherently prejudicial to the defendant, especially in a case where the credibility of the perpetrator and the victim is the sole issue. We accordingly hold that in this limited context the trial court abused its discretion in allowing the expert's opinion into evidence.

III. EXCLUSION OF REBUTTAL TESTIMONY THAT ANOTHER INDIVIDUAL COULD HAVE BEEN THE PERPETRATOR
The appellant contends that the judge erroneously excluded as irrelevant Anderson's testimony that B.H. told her she had been sexually abused by her mother. If the state introduces evidence that upon physical examination of a victim a physician has determined that a child has engaged in sexual intercourse, then the defendant is entitled to introduce evidence that the child had previously engaged in sexual intercourse with persons other than the defendant. § 794.022(2), Fla. Stat. (1993); McGriff v. State, 601 So.2d 1320 (Fla. 2d DCA 1992); In the Interest of K.C., 582 So.2d 741 (Fla. 4th DCA 1991); Skipper v. State, 537 So.2d 1138 (Fla. 5th DCA 1989); Deel v. State, 481 So.2d 15 (Fla. 5th DCA 1985), review denied, 488 So.2d 831 (Fla. 1986). Here, the nurse practitioner testified that the physical findings of intercourse could have occurred anytime in the preceding three years. B.H.'s mother *1361 continued to have intermittent contact with her as recently as two months prior to the trial.
We conclude that the exclusion of this evidence was error, and we cannot say beyond a reasonable doubt that the error in refusing to consider exculpatory evidence was harmless beyond a reasonable doubt.

IV. CUMULATIVE PUNISHMENT ON BOTH COUNTS II AND IV VIOLATED THE PROHIBITION AGAINST DOUBLE JEOPARDY
We agree with the appellant that the convictions for both Count II and Count IV constitute double jeopardy. See Fjord v. State, 634 So.2d 714 (Fla. 4th DCA 1994); Bailey v. State, 559 So.2d 604, 607 (Fla. 3d DCA 1990), review denied, 574 So.2d 139 (Fla. 1990). Count II charges that Audano penetrated B.H.'s vagina with his fingers. Count IV charges that during the same time period as Count II, he touched her vaginal area with his hands. The record shows that the touching in Count IV is based on the same evidence as the penetration in Count II. B.H. testified that Audano digitally penetrated her vagina as charged in Count II only one time. Thus, the conviction and sentence imposed for Count IV cannot stand.

V. SENTENCING GUIDELINES DEPARTURE SENTENCE
The trial judge provided four reasons for the departure from the sentencing guidelines. Audano challenges all four reasons as invalid bases for a departure sentence.
The first reason, psychic trauma greater than that commonly found in lewd and lascivious cases, was based upon B.H.'s psychological evaluation performed by the court-appointed psychologist. In certain extraordinary circumstances, extreme or severe psychological trauma not inherent in the crime charged can serve as a basis for departure. Karchesky v. State, 591 So.2d 930, 932 (Fla. 1992); Wilson v. State, 567 So.2d 425, 427 (Fla. 1990); Firkey v. State, 593 So.2d 1155, 1156 (Fla. 4th DCA 1992).
The psychologist's report does not, however, support this criteria. He characterized her psychological problems as "typical," and stated that it cannot be known to what extent her problems are attributable to the charged offenses as opposed to her difficult childhood experiences. Before sentencing, the state advised the court it was not seeking a departure based on extraordinary psychological trauma because it had no good faith basis to do so.
The second basis for departure was based upon B.H.'s particular vulnerability and the appellant's abuse of her trust. The trial judge relied on Wemett v. State, 567 So.2d 882, 887 (Fla. 1990), which stated that "[i]t may be possible for a trial court to combine age-related vulnerability with other substantial factors to establish a clear and convincing reason for departure if those factors together, proved beyond a reasonable doubt, show that the defendant was peculiarly dangerous, or the criminal act was extraordinary or egregious." The record here does not support such a conclusion.
The court's third departure ground, that Audano built the trust of the victim over several months and then preyed on her unusual vulnerability, adds nothing to the second reason articulated by the judge. "Premeditation or calculation is a sufficient reason for departure in a sexual battery case only if it is of a heightened variety." State v. Obojes, 604 So.2d 474, 475 (Fla. 1992). Heightened premeditation consists of a careful plan formulated with cold forethought. Obojes at 475. There is no support in the record for the court's finding that Audano's behavior was equivalent to the stalking in Obojes.
The final departure ground was that Audano exposed B.H. to genital warts and herpes. See Cooper v. State, 539 So.2d 508 (Fla. 1st DCA), review denied, 548 So.2d 662 (Fla. 1989) (approved departure for the reason that the defendant knew or should have known on account of his homosexual lifestyle that he had been exposed to AIDS and exposed his victim to the disease). There is no evidence that B.H. contracted genital warts or herpes. We cannot equate an unproven *1362 exposure to incurable but nonfatal venereal diseases to exposure to AIDS.

VI. VICTIM INJURY POINTS UNDER KARCHESKY

Finally, Audano disputes the assessment of forty victim injury points based on penetration. Because the court found and the record shows that the victim testified to pain on the occasion of sexual intercourse, forty points were properly assessed for slight injury. See Karchesky.
Reversed and remanded for a new trial.
THREADGILL and ALTENBERND, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).