ALTENBERND, Judge.
J.H.C.[1] appeals his convictions and sentences for two counts of sexual battery on a child under the age of twelve, and seven counts of engaging a child in sexual activity by a person in familial authority. We reverse and remand for a new trial because of potential gender discrimination during jury selection.
When this case was tried, no Florida appellate court had yet applied State v. Neil, 457 So.2d 481 (Fla.1984), to gender discrimination. During jury selection, the state used peremptory challenges to strike several prospective male jurors. The defendant objected to these strikes, and made a showing sufficient to require a Neil inquiry. The trial court declined to conduct a Neil inquiry because it did not believe gender discrimination was a proper basis for an objection to the use of a peremptory challenge. Recently, our supreme court has expanded Neil to include gender discrimination and has ruled that the only appropriate appellate remedy is reversal for a new trial. Abshire v. State, 642 So.2d 542 (Fla.1994). Accordingly, we reverse and remand for a new trial. We address two of the additional issues raised on appeal because they involve matters that could affect a new trial.
First, the trial court erred in permitting the state to use an expert, a child psychologist, to vouch for the credibility of a victim who was a teenager at the time of trial. The circumstances surrounding the use of this expert are virtually identical to those presented in Audano v. State, 641 So.2d 1356 (Fla. 2d DCA 1994). In Audano we held that the trial court abused its discretion in admitting such “inherently prejudicial” expert testimony where the victim was mature enough so that a jury could reach its *602 own determination of her credibility. Id., at 1360-1361.
J.H.C. was charged with multiple counts of sexual misconduct with his daughter. In 1987, when the alleged conduct began, the daughter was almost twelve years old. When she testified at trial, she was seventeen years old. She was an articulate witness, remembered specific events, and was able to identify her father as the defendant. Because there were no eye witnesses to any of the events and no force or violence was involved, the state’s case depended largely upon the daughter’s credibility.
The state called Kathryn Kuehnle, a child psychologist, to render an opinion that the daughter fit a “sexually abused child profile.” This opinion was based on interviews with the daughter, buttressed by several common psychological tests. Those tests included: (1) the Wechsler Intelligence Scale, an IQ test; (2) the Woodcock-Johnson Test of Achievement, a school placement examination; (3) the Minnesota Multiphasic Personality Inventory for Adolescents (MMPI); and (4) the Rorshack and Thematic Apperception Tests, two common projective tests.
Over objection, the trial court decided that Ms. Kuehnle could not answer questions concerning the daughter’s truthfulness, but that she could render an opinion on whether the daughter fit within the sexually abused child profile, i.e., whether she had been a victim of sexual abuse. The flaw in this ruling arises from the fact that under current methods of psychology, credibility is central to the “diagnosis” of this profile.
As in Audano, we conclude that the age of the victim is important. A psychologist may be able to assist a jury in understanding a young child’s unusual responses to sexual abuse when the child is not able to provide an accurate history. A psychologist may also be able to provide base information concerning an alleged victim’s intelligence and mental ability that would help the jury evaluate that witness’s testimony. But when the victim is older and can relate events to the jury through standard testimony, an expert’s opinion concerning a sexual abuse profile is little more than the opinion of the expert that the alleged victim told the truth during an interview with the expert.
This type of opinion should be distinguished from other expert evaluations. When a physician diagnoses a medical condition, for example, the diagnosis typically depends on objective physical evidence, as well as symptoms and history provided by the patient. The diagnosis depends on specific findings that the medical profession, as a group, generally accepts as the basis for a recognized diagnosis. In most cases, any qualified physician could accurately determine that a patient was suffering from a particular disease. The reliability of the diagnosis could be confirmed by another qualified physician. Such a diagnosis relies only to a limited extent upon the patient’s honesty.
When it is admitted that an alleged victim has engaged in other consensual sexual conduct, there is little or no objective physical evidence to support the psychological profile of sexual abuse. No one suggests that there are any particular results on the intelligence tests or the MMPI that are strongly indicative of sexual abuse. Projective tests depend upon the participation and unique evaluation of the psychologist. This record does not suggest that psychology, as a science, has determined that this battery of common psychological exams can validly and reliably identify persons who have been subjected to sexual abuse.[2] At best, these exams can provide information that is supportive of or consistent with the story told by the alleged victim. Thus, the sexual abuse profile is not comparable to a typical medical diagnosis, but rather is primarily an opinion that the *603 patient is telling the truth about a prior event in history. At this stage in the science of psychology, an expert’s opinion concerning the sexual abuse profile of an older victim impermissibly intrudes into the jury’s function to determine credibility. Accordingly, we hold that on remand for a new trial, the trial court shall not permit opinion testimony by the state’s expert that directly or indirectly vouches for the credibility of this teenage victim.
Finally, J.H.C. argues that the assistant state attorney engaged in improper questioning and argument at trial requiring reversal. We do not need to decide whether any of these matters would warrant a new trial in this case. The assistant state attorney would do well, however, to review the briefs and the record in this case, as well as the Code of Professional Responsibility, before trying other cases because the challenged conduct is troublesome. Similar actions in another case could be held to be prosecutorial misconduct and could result in a reversal.
Reversed and remanded with directions.
SCHOONOVER, A.C.J., and HALL, J., concur.

. We have used only the appellant’s initials in this opinion to protect the identity of the alleged victim, the appellant's minor daughter.

. Cf. Page v. Zordan, 564 So.2d 500, 502 (Fla. 2d DCA 1990) (holding trial court erred in admitting expert’s testimony on "sexual abuse legitimacy test scale" used to evaluate credibility of victim's report that she had been molested where such test was not supported by any evidence concerning its recognition and acceptance within scientific communily). See also Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923) (holding that trial court did not err in refusing to admit expert witness’s testimony regarding test to determine whether examinee was telling truth where there was no evidence that such test had "gained ... standing and scientific recognition among physiological authorities”).