651 So.2d 1224 (1995)
Virgil Eugene BALL, Appellant,
v.
STATE of Florida, Appellee.
No. 93-04281.
District Court of Appeal of Florida, Second District.
March 3, 1995.
*1225 Manuel E. Penton, Jr., of Mosley & Hoskins, P.A., Clearwater, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Tonja R. Vickers, Asst. Atty. Gen., Tampa, for appellee.
FRANK, Chief Judge.
Virgil Eugene Ball was convicted of five counts of handling and fondling a child under the age of sixteen and one count of lewd and lascivious act in the presence of a child under the age of sixteen. The three victims, friends of Ball's daughter, alleged that he touched them in a lewd and lascivious manner on various occasions when they were in the sixth grade. None of the girls immediately informed an adult of Ball's aberrant behavior. After they watched a film on sexual abuse at school, however, the girls told their guidance counselor  and subsequently their parents and a police detective  that Virgil Ball had improperly touched them during games of tag and hide and seek at sleepovers with his daughter, during an outing to the beach, and while riding in his car.
No medical or physical evidence was admitted to substantiate the victims' charges. The state did, however, present Dr. Joseph Crum, the director of the psychology department at All Children's Hospital in St. Petersburg. He was qualified as an expert in the psychology of sexually abused children. Crum had examined each of the girls and testified about the results of his interviews. In doing so, Ball contends, the court improperly admitted expert testimony. We agree and reverse.
The state elicited from Dr. Crum during his direct examination that it was unusual for children eagerly to discuss sexual abuse. Generally they did not want to talk about the subject, and one victim, H.S., was reluctant to relate what had happened to her. Dr. Crum was also permitted to explain that even though there was a spacious gap between H.S.'s chronological age of eleven years, eleven months and her mental age of nine at the time of his examination, H.S. nevertheless understood the ramifications of lying. Dr. Crum made similar assessments of A.H. and L.K., who also exhibited discrepancies between their mental and chronological ages but who nevertheless could discern the difference between truth and fabrication. Finally, Dr. Crum testified that it was common for sexual abuse victims to delay disclosure and that children are particularly apt to convey confusing and inconsistent information.
The impact of Dr. Crum's testimony, and in fact the only reason for the state to elicit it, was to bolster the credibility of the victims who testified at trial. The three girls were in the sixth grade when these incidents occurred, they were eleven or twelve when examined by Dr. Crum, and they were all fourteen when they testified at trial. None of them suffered discernible physical trauma, nor in fact did they exhibit any striking behavioral manifestations stemming from the abuse. Dr. Crum was not asked directly whether the girls' allegations were, in his opinion, truthful, and the trial judge was certainly careful to avoid allowing any statements indicating that Ball was the perpetrator, both of which are prohibited by a line of cases including State v. Townsend, 635 So.2d 949 (Fla. 1994), and Tingle v. State, 536 So.2d 202 (Fla. 1988). Nevertheless, when the testifying victims are of a certain age, the jury does not need an expert's help to decide whether or not the incidents actually occurred. J.H.C. v. State, 642 So.2d 601 (Fla. 2d DCA 1994); Audano v. State, 641 So.2d 1356 (Fla. 2d DCA 1994).
We note that the trial judge attempted to confine the expert testimony in this case to evidence that the girls' behavior was consistent with that of sexually abused children, which was permissible under some of the precursors and progeny of Townsend, such as Glendening v. State, 536 So.2d 212 (Fla. 1988), cert. denied., 492 U.S. 907, 109 S.Ct. *1226 3219, 106 L.Ed.2d 569 (1989). As is noted in Audano (which was not issued until after the trial), that type of expert medical testimony is helpful when the case involves a young victim who is unable to testify at trial. When the victim is older, however, and there exists no corroborating medical or physical evidence, these cases will often involves a credibility contest between the alleged abuser and the abused. As long as the child is capable of accurately relating events to the jury, the expert's opinion will invariably constitute a seal of approval for the alleged victim and a highly prejudicial stamp of condemnation for the alleged perpetrator.
We repeat that the trial judge was keenly mindful of the permissible limits of expert testimony expressed in the case law dealing with younger children up to the time of trial, and he ensured that the psychological evidence fell within those boundaries. It is also apparent that Dr. Crum really could not offer much concrete documentation such as test results or behavioral changes that would substantiate the children's charges. He carefully qualified all of his statements. For instance, an eleven-year old child might or might not suffer trauma from being touched on the breast or having her vagina fondled, depending upon the degree of threat to the child associated with the behavior, either from the victimizer or from the fear of potential revelation. As another example, Dr. Crum stated that L.K.'s silliness and talkativeness during her interview might have been the result of anxiety that could possibly be consistent with a more serious allegation of sexual abuse. For these reasons we have scrutinized the record to determine whether the admission of this testimony can be deemed harmless, but, having done so, we cannot say that there was no reasonable possibility that the error did not contribute to the conviction. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Accordingly, we reverse the defendant's convictions and remand for a new trial.
THREADGILL and FULMER, JJ., concur.