654 So.2d 984 (1995)
William CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. 94-0019.
District Court of Appeal of Florida, Fourth District.
May 3, 1995.
Certification Denied June 14, 1995.
*985 Richard L. Jorandby, Public Defender, and Marcy K. Allen, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William A. Spillias, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
AFFIRMED.
SHAHOOD, J., and GRIFFIN, JACQUELINE R., Associate Judge, concur.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Justice, dissenting.
I would reverse appellant's convictions for sexual battery and burglary of a dwelling, and remand for a new trial. I believe the trial court abused its discretion by improperly admitting expert opinion testimony on Post-Traumatic Stress Disorder (PTSD) suffered by an adult rape victim as evidence of lack of consent. Initially, the issue was properly preserved below. Appellant objected on the grounds that the evidence lacked any probative value, and was unduly prejudicial. He protested that the state was seeking the admission of the evidence solely to elicit sympathy from the jury. The trial court recognized the issue, and found that the evidence went to the issue of whether the victim consented to sexual intercourse.
In the instant case, the state presented Dr. Sherri Bourg as an expert in "Forensic Psychology With a Specialty With Rape Victims." Dr. Bourg said that for a person to suffer from PTSD, there must be a traumatic experience outside normal human experiences, including rape. Also, the victim suffers from either re-experiencing the trauma through nightmares and flashbacks, avoidance of stimuli associated with the trauma, or "hypervigilan[ce]"  a type of nervousness. These symptoms must last one month. The prosecutor then asked a three page hypothetical which corresponded to the facts in this case, to which appellant objected. After the trial court overruled appellant's multiple objections to the question, Dr. Bourg said that if all the facts in the hypothetical were true, the person could be diagnosed with PTSD. On cross examination, Dr. Bourg acknowledged that people can feign illness. Also, Bourg testified that many events, other than rape, can cause PTSD, including depression.
The admission into evidence of expert opinion testimony concerning a new or novel scientific principle is a four-step process. Ramirez v. State, 651 So.2d 1164 (Fla. 1995). First, the trial judge must determine whether the expert testimony will assist the jury in understanding the evidence or in determining a fact in issue. Second, the trial judge must decide whether the expert's testimony meets the Frye standard.[1]Id. Next, the trial judge must determine whether a particular witness is qualified as an expert to present opinion testimony on the subject in issue. Id. Fourth, the judge may then allow the expert to render an opinion on the subject of his or her expertise, and the jury is entitled to determine the credibility of the expert's opinion. Id. Hence, under Ramirez, a Frye analysis is necessary only if the trial judge rules that the opinion testimony would assist the jury. I believe the trial judge in this case erroneously held that the expert testimony would assist a jury in determining whether the victim consented.
A look at Florida case law suggests that the age of the victim may be critical in determining the admissibility of expert opinion testimony on PTSD. This court has held expert testimony that a child victim of sexual abuse suffers from PTSD is admissible to demonstrate that the abuse took place, as long as the expert did not directly vouch for the credibility of a witness. Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986). Recently, the second district has tackled the issue of the admissibility of expert testimony concerning the use of sexual abuse profiles in cases involving older victims. In J.H.C. v. State, 642 So.2d 601 (Fla. 2d DCA 1994), the court held the testimony of a psychologist, who examined the teenage victim, that the *986 teenager fit a sexually abused child profile was improperly admitted by the trial court. Id. at 603. The court wrote that the age of the victim was important, and "[a]t this stage in the science of psychology, an expert's opinion concerning the sexual abuse profile of an older victim impermissibly intrudes into the jury's function to determine credibility." Id. The expert's opinion in such a case is little more than an opinion that the alleged victim told the truth during an interview with the expert. Id. at 602.
Similarly, in Audano v. State, 641 So.2d 1356 (Fla. 2d DCA 1994), the court held that an expert's testimony, following a lengthy hypothetical tracking the facts of that case, that the claim of abuse by a teenager was "more consistent with a true allegation of sexual abuse," was improperly admitted. Id. at 1360. Again, the age of the victim was a determining factor. The court held the evidence was inherently prejudicial, especially where the credibility of the perpetrator and the victim was the sole issue. Id.
Our case is distinguishable from J.H.C. and Audano such that those cases are not dispositive. The issue in the instant case is consent, not whether the event occurred. Also, Dr. Bourg did not examine the victim for the purposes of rendering her opinion, and did not directly testify as to her truthfulness. Even so, these cases suggest that the age of the victim, and an ability to relate an event and its effects on the person, are important considerations in determining the admissibility of expert opinions as to PTSD in sexual abuse cases.
A review of decisions from other states shows an almost even split as to the admissibility of expert testimony about PTSD or rape trauma syndrome (RTS) on the issue of consent. Apparently, the first case to decide the issue was State v. Marks, 231 Kan. 645, 647 P.2d 1292 (1982). In that case, the Kansas Supreme Court held that expert testimony describing PTSD, and an opinion that the victim suffered a frightening assault and was suffering from rape trauma syndrome, was admissible. Id., 647 P.2d at 1299. It found that RTS was generally accepted as a common reaction to sexual assault, and evidence of such is relevant when the defendant claims the victim consented to sexual intercourse. Id. The Kansas Supreme Court held the expert's opinion does not invade the province of the jury, and is offered as any other evidence, with the expert subject to cross examination and the jury left to determine the weight of the testimony. Id.
The supreme courts of Montana, Arizona, Maryland and West Virginia have agreed with the decision in Marks. In State v. Liddell, 211 Mont. 180, 685 P.2d 918 (1984), the court, citing to Marks, held that psychiatric testimony is admissible to aid the jury in determining whether there was consent to engage in sexual activity. Liddell, 685 P.2d at 923. See also State v. Huey, 145 Ariz. 59, 699 P.2d 1290 (1985) (approving of Marks and Liddell in a case where there is evidence of intercourse and defendant alleges consent); State v. Allewalt, 308 Md. 89, 517 A.2d 741 (1986); State v. McCoy, 179 W. Va. 223, 366 S.E.2d 731 (1988).
On the other hand, several states have held evidence of PTSD and RTS to be inadmissible. In People v. Bledsoe, 36 Cal.3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), where the issue was consent, the California Supreme Court applied the Frye standard, as would be required in Florida under the second prong of Ramirez, and held expert testimony that a complaining witness suffers from RTS is not admissible to prove that a rape occurred. Bledsoe, 203 Cal. Rptr. at 460, 681 P.2d at 301. It found that the syndrome was devised as a therapeutic tool to help treat emotional problems of patients, but was not developed to determine whether a rape had occurred. Id. at 459, 681 P.2d at 300. That court distinguished the use of the testimony to rebut inferences from widely held misconceptions of rape, such as that a delay in reporting the rape is inconsistent with a claim of rape, finding that evidence of PTSD or RTS would be useful to a jury in this circumstance. Bledsoe, 203 Cal. Rptr. at 457, 681 P.2d at 298.
The Bledsoe court acknowledged that although the concept may be generally relied upon in the general scientific community, it is not relied upon for the purpose advanced by the prosecution: that a rape occurred. Id. at 460, 681 P.2d at 301. At the same time, the *987 court held that lay witnesses could testify as to the alleged victim's emotional and psychological trauma suffered after the rape, but
[p]ermitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome, the victim was therefore raped, unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness.
Bledsoe, 203 Cal. Rptr. at 460, 681 P.2d at 301, quoting State v. Saldana, 324 N.W.2d 227, 230 (Minn. 1982).
The Washington Supreme Court's analysis in State v. Black, 109 Wash.2d 336, 745 P.2d 12 (1987), is also helpful in the instant case. The Washington Supreme Court analyzed whether expert testimony on PTSD suffered by rape victims was admissible on the issue of consent under the Frye standard, as would be required in Florida. The court, while acknowledging the split of authorities on the issue, sided with Bledsoe and Saldana, and held that expert witness testimony is inadmissible on the issue of consent because it lacks scientific reliability and unfairly prejudices a defendant accused of rape. Black, 745 P.2d at 19. Interestingly, the Washington Supreme court held that the expert witness testimony was inadmissible "whether it be denominated as a form of `post-traumatic stress disorder', `rape trauma syndrome' or otherwise[.]" Id. at 19.[2]
I agree with the decisions in Bledsoe and Black, and would hold that expert testimony on PTSD suffered by adult rape victims is inadmissible on the issue of whether the victim consented to sexual intercourse. As stated in Audano, 641 So.2d 1356, and J.H.C., 642 So.2d 601, an adult victim is capable of testifying about her emotional and psychological problems subsequent to an incident. Similarly, other lay witnesses can testify about an alleged victim's change in behavior after an incident. See Bledsoe, 203 Cal. Rptr. at 460, 681 P.2d at 301. A jury is capable of considering evidence, and weighing it, to determine whether there was consent or not. Hence, expert testimony that attaches a label to an alleged victim's behavior is not helpful in determining the factual issue of consent.
The state correctly notes that in the instant case appellant did not object on the grounds that the evidence did not meet the Frye standard. Because the evidence would not assist the jury in determining whether the victim consented in this case, there is no need to move to the second prong of the Ramirez process: whether the evidence meets the Frye standard. Even so, the California Supreme Court found that the failure to mention Frye was not an insurmountable hurdle since the defendant did object on relevancy grounds, and in that case "there is a close connection between the relevance of testimony on rape trauma syndrome and the reliability of that testimony under the Frye test." Bledsoe, 203 Cal. Rptr. at 457, 681 P.2d at 298. I also believe that there is a close connection between relevance and the Frye standard, and that appellant's persistent objections, though inartful, made the trial court aware of the issue in this case. The state, as proponent of the evidence, has the burden of demonstrating that PTSD and RTS are generally accepted means for proving a lack of consent. The absence of evidence in the record to meet this burden supports reversal in this case. As for the Frye test itself, the Washington Supreme Court undertook a lengthy analysis and determined that "expert testimony on rape trauma syndrome is not a scientifically reliable means of proving lack of consent in a rape case." Black, 745 P.2d at 18. Although the jurisdictions are split on this issue, I agree with the holding of the Washington Supreme Court.
I believe this holding is more persuasive than the Marks line of cases, with which the majority apparently sides, which hold that an expert's testimony on PTSD suffered by rape victims is like any other evidence to be *988 weighed by the jury. Marks, 647 P.2d at 1299. To make such a holding in Florida, it would first be necessary to find that the evidence assists the jury, that it passes the Frye test, and that the expert was qualified to give the opinion. Ramirez, 651 So.2d at 1167. The majority seems to hold that the evidence would assist a jury in determining whether there was consent, and that the lack of an objection to the failure to meet the Frye test precludes this court from addressing this prong. For reasons previously stated, I disagree with the majority on both points.
Given the fact that expert witness testimony on PTSD suffered by adult rape victims does not assist a jury in determining whether there was consent, I would find that the trial court abused its discretion by allowing Dr. Bourg to testify about PTSD as it relates to an adult rape victim. Dr. Bourg should not have been permitted to opine that a person suffering the same symptoms as the alleged victim in this case suffers from PTSD. This is especially true considering the lack of evidence in this case concerning whether PTSD or RTS is generally accepted in the scientific community to determine whether, in legal terms, a rape occurred.[3] Because the consent defense was the main issue in this case, I cannot say that the trial court's error was harmless, despite other evidence of appellant's guilt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Because the supreme court should decide whether this expert testimony is admissible on the issue of consent, I would certify the following question as being one of great public importance:
WHETHER EXPERT TESTIMONY CONCERNING POST-TRAUMATIC STRESS DISORDER SUFFERED BY AN ADULT RAPE VICTIM IS ADMISSIBLE ON THE ISSUE OF CONSENT.
NOTES
[1] The Frye standard is whether the expert's testimony is based on a scientific principle or discovery that is "sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye v. United States, 293 F. 1013, 1014 (D.C. Cir.1923).
[2] In the instant case, Dr. Bourg never used the term "rape trauma syndrome." However, it is clear from her testimony, and from the hypothetical, that she was testifying about trauma brought about by rape  rape trauma syndrome. The state requested, in the presence of the jury, that "Dr. Bourg be qualified as an expert witness in Forensic Psychology to be allowed to testify with her specialty in examining and treating rape victims." Hence, it makes no difference that the actual term "rape trauma syndrome" was not used in this case.
[3] I note that there may be issues other than consent, such as myths and misconceptions dealing with rape, upon which PTSD in rape victims may be properly admitted, as discussed by the California Supreme Court in Bledsoe, 203 Cal. Rptr. at 457, 681 P.2d at 298.