**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10118

Non-Argument Calendar

————————————

DWAYNE E. SHEPPARD,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:12-cv-01127-SDM-AEP

————————————

Before WILLIAM PRYOR, Chief Judge, and LUCK and LAGOA, Circuit
Judges.

PER CURIAM:

Dwayne Sheppard, a Florida prisoner serving a life sentence for sexual battery with a deadly weapon, appeals *pro se* the denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. We granted Sheppard a certificate of appealability to address whether his sentence violates the Sixth Amendment. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004). Because the state court reasonably concluded that the *Apprendi* error was harmless, we affirm.

## I. BACKGROUND

One night in June 1985 in Oldsmar, Florida, a naked intruder awoke J.J.F. as she slept with her then five-year-old daughter, held a sharp object to her as he forced her into the living room, raped her, and then forced her to shower off the evidence. It was not until 20 years later, in 2005, that J.J.F. identified Sheppard and another individual as suspects. Authorities charged Sheppard with sexual battery with a deadly weapon. *See* Fla. Stat. § 794.011(3). Sheppard proceeded to trial in 2008.

At trial, J.J.F. testified that, on June 22, 1985, a naked intruder awoke her in the middle of the night. She was in bed with her five-year-old daughter. The man held a sharp object to her, told her to "be quiet," "to come into the living room," and not to "wake [her] daughter." J.J.F. complied because she "didn't want him to hurt her [daughter]," and "didn't want her [daughter] to see any of this." In the living room, the man told J.J.F. that he had just gotten out of jail and that some individuals were "willing to pay him [$500] to do this." During this time, the man repeatedly sniffed

from a canister. He touched J.J.F.'s breasts and vagina, placed his mouth on her vagina, engaged in vaginal sex, and ejaculated on her stomach. He then directed her to clean off in the shower.

Authorities responded to J.J.F.'s home in the early morning hours of June 22, 1985. Detective Timothy Szmuigala testified that he and several other officers concluded that an intruder had removed a screen from the back window of J.J.F.'s home to gain entry. Authorities recovered two fingerprints from the screen but could not identify a match.

J.J.F.'s neighbor, Bernard Garele, testified that, on the evening of the crime, he heard a car door close and saw a man exit a blue "muscle car" with a white vinyl top. Other evidence established that, two weeks after the crime, Sheppard reported to authorities that someone had stolen his blue Mercury Cougar with a white vinyl top. And still other evidence established that, in February 1986, police detained Sheppard while he was walking down a residential street near J.J.F.'s home at 1:00 a.m. Officers recovered a woman's stockings, a knife, and a container for inhalants. Sheppard told authorities that he intended to "scare some girls at a party."

Because Szmuigala could not develop any leads, he closed the case. It was not until 20 years later, in 2005, that Carol Beauchamp, a latent print examiner, began comparing fingerprints from cold cases to fingerprints in a computer database and discovered a match with Sheppard's fingerprints. After determining that the fingerprints belonged to Sheppard, Detective Michael Bailey

contacted J.J.F., who identified Sheppard and another individual as suspects. Bailey learned that Sheppard had ties to the Oldsmar area and contacted him in September 2005.

Sheppard voluntarily agreed to come to the police station. During the interview, Sheppard told authorities that, in 1985, he lived in Clearwater, Florida, and worked as a painter. He admitted to being close friends with an individual who lived across the street from J.J.F., but he otherwise denied recognizing J.J.F.'s home and could not explain why his fingerprints were found on the screen.

For his defense, Sheppard called a records custodian for the City of Oldsmar, who testified that, in June 1985, Sheppard was employed in the City's water department. Sheppard also called Dwayne Milligan, who testified that, on June 21, 1985, he, Sheppard, and other friends were out late celebrating the birth of Milligan's daughter, and that they did not return to Milligan's home until the early morning hours of June 22, 1985. Sheppard also testified that the City's water department employed him in June 1985 and that, on June 21, 1985, he was with Milligan and slept at Milligan's home. He testified that he may have touched the screen in J.J.F.'s backyard as part of his duties for the City, explaining that he often picked up items in residents' yards when he checked their water meters. During the state's rebuttal, J.J.F. testified that her water meter was in front of her home.

The jury convicted Sheppard of sexual battery with a deadly weapon, and the court sentenced him to life imprisonment. The court departed upward from Sheppard's sentencing-guideline

range based, in part, on its findings of heightened premeditation and victim vulnerability. The Second District Court of Appeal affirmed. *Sheppard v. State*, 31 So. 3d 183 (Fla. Dist. Ct. App. 2010).

Sheppard challenged his life sentence under *Apprendi* and *Blakley* in various *pro se* postconviction motions and argued that the upward departure factors of heightened premeditation and victim vulnerability were never proved beyond a reasonable doubt to a jury. *See* Fla. R. Crim. P. 3.850; Fla. R. Crim. P. 3.800(a). The state postconviction court denied his Rule 3.850 motion and ruled that the claim had "no merit" because the trial court had articulated its reasons for departing from the guidelines, which was all that was required under Florida law. The Second District Court of Appeal affirmed. *Sheppard v. State*, 96 So. 3d 898 (Fla. Dist. Ct. App. 2012). The state postconviction court denied his Rule 3.800(a) motion as meritless and explained that any error was harmless because the trial record supported beyond a reasonable doubt that Sheppard acted with heightened premeditation and that J.J.F. was vulnerable. The Second District Court of Appeal affirmed. *Sheppard v. State*, 190 So. 3d 73 (Fla. Dist. Ct. App. 2016).

In August 2019, Sheppard petitioned *pro se* for a writ of habeas corpus in the district court. *See* 28 U.S.C. § 2254. He alleged that, in imposing an upward departure at sentencing, the trial court violated his federal right to a jury under *Apprendi* by relying on facts not proved to a jury beyond a reasonable doubt. The district court denied his petition and ruled that the state postconviction court reasonably concluded that any *Apprendi* error was harmless.

We granted a certificate of appealability on the following is-
sue: "Whether Sheppard's life sentence violates the rule announced
in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*,
542 U.S. 296 (2004), and their progeny."

## II. STANDARD OF REVIEW

When a state court has adjudicated a constitutional error as
harmless, a federal court may not grant habeas relief unless the pe-
titioner clears two separate hurdles. *See Brown v. Davenport*, 596 U.S.
118, 134 (2022). First, he must establish that the error had a "sub-
stantial and injurious effect or influence in determining the jury's
verdict" under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Id.* at 133.
Second, he must, under the Antiterrorism and Effective Death Pen-
alty Act, establish that the state court's harmlessness ruling was
contrary to, or involved an unreasonable application of, clearly es-
tablished federal law, or was based on an unreasonable determina-
tion of the facts of his case. *Id.* at 127; *see also* 28 U.S.C. § 2254(d).
This second test is a formidable barrier that permits relief only if
the state court's decision was "so lacking in justification that there
was an error well understood and comprehended in existing law
beyond any possibility for fairminded disagreement." *Harrington v.
Richter*, 562 U.S. 86, 103 (2011). Because a petitioner must satisfy
both tests, "a federal court must *deny* relief to a state habeas peti-
tioner who fails to satisfy [either test]." *Brown*, 596 U.S. at 134.

## III. DISCUSSION

"Other than the fact of a prior conviction, any fact that in-
creases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.

Under *Apprendi* and *Blakley*, Sheppard's life sentence is unconstitutional because it is based on judicial findings—heightened premeditation and victim vulnerability—instead of findings made by a jury. *Id*. at 303-04. Although the statutory maximum for sexual battery in 1985 was life imprisonment, Fla. Stat. § 775.082(3) (1985), Sheppard was sentenced under Florida's 1983 guidelines, which capped his permitted sentencing range at 12 years. Because any departure above that range required additional factual findings, the 12-year cap constituted the "statutory maximum" for *Apprendi* purposes. *See Plott v. State*, 148 So. 3d 90, 95 (Fla. 2014). By imposing a life sentence based on its own findings instead of those made by a jury, the trial court exceeded its authority and violated the Sixth Amendment. Yet *Apprendi* and *Blakely* violations are subject to harmless error review. *Washington v. Recuenco*, 548 U.S. 212 (2006).

The state postconviction court, applying the standard in *Chapman v. California*, 386 U.S. 18, 24 (1967), ruled that any error under *Apprendi* and *Blakely* was harmless beyond a reasonable doubt. It ruled that any rational jury would have also found both heightened premeditation and that J.J.F. was vulnerable. Because this harmlessness determination is an adjudication on the merits of

Sheppard's claim, we review it under both section 2254(d) and *Brecht*.

We conclude that the state court neither unreasonably applied *Chapman* nor made an unreasonable determination of the facts under Florida law. We start with the state postconviction court's determination that any rational jury would have also found that Sheppard's actions established heightened premeditation. We then turn to its determination as to J.J.F.'s vulnerability.

The state court reasonably determined that Sheppard's conduct established heightened premeditation. Under Florida law, premeditation supports a sentencing departure only if it consists of a "careful plan or prearranged design formulated with cold forethought." *State v. Obojes*, 604 So. 2d 474, 475 (Fla. 1992). The Florida Supreme Court has distinguished between mere opportunity and deliberate planning. For example, stalking a victim for two weeks constitutes heightened premeditation, *id.*, while taking a victim on a camping trip and committing a lewd act does not, *see Marcott v. State*, 650 So. 2d 977, 979 (Fla. 1995); *see also Audano v. State*, 641 So. 2d 1356, 1361 (Fla. Dist. Ct. App. 1994) (holding that heightened premeditation standard was not met where the defendant "built the trust of the victim over several months and then preyed on her unusual vulnerability").

Unlike the impulsive crimes of opportunity in *Marcott* and *Audano*, Sheppard's brazen actions align with the "prearranged design" in *Obojes*. *See Obojes*, 604 So. 2d at 475; *cf. Marcott*, 650 So. 2d at 1361; *Audano*, 641 So. 2d at 1361. Sheppard's $500 bet

transformed the assault from an impulse into a goal-oriented mission with a financial incentive. His calculated approach—exploiting his knowledge of the neighborhood, parking down the street to avoid detection, and striking in the middle of the night—reveals a deliberate strategy to reduce his risk of criminal exposure. And this cold forethought extended to the assault. Sheppard armed himself in advance to ensure J.J.F.'s compliance and stripped naked to avoid leaving fiber evidence. His command to J.J.F. to shower off the evidence after the assault also establishes a degree of rehearsal and calculation that exceeds mere opportunity.

The state court also reasonably determined that J.J.F. was particularly vulnerable. A victim's vulnerability supports a departure only when the offender is aware of a specific weakness that makes the victim "particularly" vulnerable. *Hawkins v. State*, 522 So. 2d 488, 490 (Fla. Dist. Ct. App. 1988). Florida courts have held that general helplessness or being asleep does not warrant a departure. *See Williams v. State*, 492 So. 2d 1308, 1309 (Fla. 1986) (holding that the victim's sleep at the time of a stabbing was insufficient); *Grant v. State*, 547 So. 2d 952, 953 (Fla. Dist. Ct. App. 1989) (same as to robbery). Likewise, defenselessness or gender is not a valid basis for departure because such factors are "common to nearly any" sexual battery or armed robbery. *Wemett v. State*, 567 So. 2d 882, 887 (Fla. 1990); *Mathis v. State*, 515 So. 2d 214, 216 (Fla. 1987).

J.J.F. was targeted within a unique, situational trap that made her particularly vulnerable. *See Hawkins*, 522 So. 2d at 490; *cf. Williams*, 492 So. 2d at 1309; *Grant*, 547 So. 2d at 953. By

confronting her in the middle of the night as she lay beside her daughter, Sheppard leveraged J.J.F.'s maternal instincts against her. J.J.F.'s focus on the safety of her child paralyzed her ability to resist and created a vulnerability that exceeded mere gender or sleep. *See Williams*, 492 So. 2d at 1309; *Wemett*, 567 So. 2d at 887. Sheppard was aware of this dilemma and exploited it to ensure J.J.F.'s compliance. *See Hawkins*, 522 So. 2d at 490. Because the state court's harmlessness ruling was not unreasonable under the Antiterrorism and Effective Death Penalty Act, Sheppard is ineligible for federal habeas relief regardless of whether he could satisfy *Brecht*. *See Brown*, 596 U.S. at 134.

## IV. CONCLUSION

We **AFFIRM** the denial of Sheppard's petition.